Roger KRUEGER; Roger Krueger, d/b/a The Ponderosa Rawhide Lounge; June A. Parker; Virgie Poston; Billy Prescott and James L. Cash, as sole shareholders of EX–ATC, Inc., a Fla. corporation, d/b/a Hideout Lounge, Plaintiffs-Appellants,

Sam J. Cantavespre, etc., et al., Plaintiffs,

v.

CITY OF PENSACOLA, a municipal corporation of the State of Florida, et al., Defendants-Appellees.

No. 84–3065.

United States Court of Appeals, Eleventh Circuit.

May 6, 1985.

William Eddins, Pensacola, Fla., for plaintiffs-appellants.

Don Caton, John W. Fleming, Asst. City Atty., William D. Wells, Pensacola, Fla., for defendants-appellees.

Before FAY and VANCE, Circuit Judges, and MACMAHON *, District Judge.

VANCE, Circuit Judge:

In this case, owners of topless bars in the city of Pensacola, Florida bring a first amendment challenge to an ordinance which bans topless dancing in establishments where alcohol is served. Because Florida has not delegated to its local municipalities any of its twenty-first amendment powers to regulate activities connected with the sale of intoxicating liquors, the city must justify such a restriction of communication under its general police power. Since Pensacola has failed to produce evidence that any legitimate government interest motivated the city council to restrict the communication involved, we find the ordinance unconstitutional under the first amendment.

## I.

For many years prior to 1982, the city of Pensacola was host to a number of bars which entertained patrons with seminude dancing. The activities in and around these establishments periodically gave rise to minor criminal complaints, but in general topless dancing coexisted rather uneventfully with other aspects of the city's social life. At one point, the police commissioner informed the city council that the topless bars generated a disproportionate number of complaints with regard to the crime of "B-drinking" (employee solicitation of drinks from customers), but the complaints decreased significantly after the city council passed an ordinance early in 1982 which required topless dancers to register and fill out information forms at the police department.

Then, in October 1982, the owners of an erstwhile liquor store located next door to the Brownsville Baptist Church painted go-go girls on the side of their building, installed an illuminated arrow on its facade, and began featuring their establishment as the "Rawhide Topless Go-Go & Lounge." Almost immediately members of the church began to lodge complaints with the Pensacola City Council about the presence of a topless lounge next door. Within a month they were joined by a number of other churches and religious organizations and the scope of the protest had spread beyond the Rawhide Lounge to all "other similar establishments in the city limits of Pensacola" as "an affront to all standards of decency in the community." The city council responded to this strong tide of public sentiment by holding a number of meetings where interested members of the public were given the opportunity to speak on the issue. The meetings generated extended debate over the morality of topless dancing, the fairness of putting dancers and bar owners out of work on the basis of offended public sensibility, and the propriety of legislating on such a moral question. None of those in favor of the ordinance made any reference to any crime problems associated with topless dancing, and some of those who opposed it pointed out that the city manager had sent a memorandum to the council indicating that there were no particular crime problems emanating from the topless establishments.[1] Following the de-

---

* Honorable Lloyd F. MacMahon, U.S. District Judge for the Southern District of New York, sitting by designation.

1. The text of the city manager's memorandum stated:

You will recall that City Council did recently adopt an ordinance requiring that all entertainers in [topless dancing] establishments register with the Police Department. This regulation is in effect and the Police Department is monitoring activities at the Rawhide Lounge and all similar businesses. The registration ordinance adequately provides the necessary controls on criminal activity in the businesses in question. As a law enforcement

bate, the City Council voted to "instruct the City Attorney to prepare the strongest possible ordinance ... to prohibit nude dancing in the City of Pensacola." The city attorney then drafted an ordinance patterned after a Cocoa Beach provision which had been found constitutional by a panel of this circuit in *Grand Faloon Tavern, Inc. v. Wicker,* 670 F.2d 943 (11th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 132, 74 L.Ed.2d 113 (1982). The city attorney also advised the council members that the facts of *Grand Faloon* were very different from those before them, since the Cocoa Beach commissioners had been confronted with evidence that substantial criminal activity took place in topless bars, whereas the Pensacola Chief of Police had determined that there was no greater incidence of crime in topless bars than in any other place serving alcoholic beverages. The Council nonetheless passed the ordinance

by unanimous vote on January 27, 1983 [2] and adopted it on its second reading on February 24, 1983.

Owners of the Rawhide Lounge and other topless dancing establishments, along with a number of dancers, then brought suit challenging the ordinance as a violation of the first amendment free speech clause. At trial, the city attorney elicited some testimonial evidence that it was more difficult to control the crime of "B-drinking" in topless bars than elsewhere. The district court found as a fact that the ordinance furthered a substantial government interest in controlling "B-drinking", and upheld it on that ground.

## II.

In evaluating the constitutionality of Pensacola's topless dancing ordinance,[3]

issue, the Police Department cannot substantiate that problems occur anymore [sic] frequently at topless bars than they do at non-topless bars. The question of municipal regulation, in this instance, relates to the moral issue involved, rather than the law enforcement issue.

2. As the plaintiffs point out, the factors involved in the city council's decisionmaking process are particularly well documented because it was required by Florida's Government in the Sunshine Act, Fla.Stat.Ann. § 286.011 (West 1975), to make its meetings public and to make the minutes available for public inspection.

3. Ordinance 34–83 reads in principal part as follows:

BE IT ORDAINED BY THE CITY OF PENSACOLA, FLORIDA.

SECTION 1. Purpose.

The purpose of this ordinance is to prohibit certain acts of commercial exploitation of human sexuality in commercial establishments within the City of Pensacola where alcoholic beverages are served or offered for sale for consumption on the premises and to reduce the likelihood of criminal activity, moral degradation and disturbances of the peace and good order of the community which may occur when such commercial exploitation is permitted in such places.

SECTION 2. Findings.

The City Council finds that there is an increasing commercial exploitation of human sexuality by owners and operators of commercial establishments within the City of Pensacola where alcoholic beverages are served or offered for sale for consumption on the

premises. Such exploitation takes place in the form of employing or permitting persons to perform or exhibit their nude or semi-nude bodies to other persons as an inducement to such other persons to purchase alcoholic beverages. The direct results of such exploitation is [sic] criminal activity, moral degradation and disturbances of the peace and good order of the community. In addition, such commercial exploitation of such nude and semi-nude acts is adverse to the public's interest in the quality of life, tone of commerce and total community environment in the City of Pensacola.

SECTION 3. Prohibition.

3.1. It shall be unlawful for any person maintaining, owning or operating a commercial establishment located within the boundaries of the City of Pensacola, Florida, at which alcoholic beverages are offered for sale for consumption on the premises:

(A) To suffer or permit any female person, while on the premises of said commercial establishment, to expose to the public view that area of the human female breast at or below the top of the areola thereof.

(B) To suffer or permit any female person, while on the premises of said commercial establishment, to employ any device or covering which is intended to give the appearance of or simulate such portions of the human female breast as described in Section 3.1.(A).

(C) To suffer or permit any person, while on the premises of said commercial establishment, to expose to public view his or her genitals, pubic area, buttocks, anus or anal cleft or cleavage.

we find that many of the initial stages of our inquiry have already been resolved by controlling authority. First of all, we are bound to treat topless dancing as a form of expression which is protected at least to some extent by the first amendment. We acknowledge that the nature of the communication involved in most barroom dancing is such that "few of us would march our sons and daughters off to war" to protect that form of expression. *Young v. American Mini Theaters*, 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (1976). Nonetheless, as the Supreme Court has noted, the proscription of nude dancing infringes on some forms of visual presentation which would not fall within the Court's definition of obscenity. *California v. La-Rue*, 409 U.S. 109, 116, 93 S.Ct. 390, 396, 34 L.Ed.2d 342 (1972).[4] Because of this potential for infringement on protected expression, we must require the government to show that its interest in regulating such activity is based on something other than a desire to censor the communication because of the community's dislike of its content.

■ We note further that in this case the municipality's efforts to regulate topless dancing cannot be given latitude simply because the performances are proscribed only in establishments licensed to sell liquor. The Supreme Court recognized in *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981) that a state statute prohibiting nude dancing in places where alcohol was sold should be given particular deference because of the state's power to regulate the sale and use of intoxicating liquors under the twenty-first amendment. Because Florida has not delegated its regulatory authority to municipalities, however, Pensacola must justify its ordinance under the stricter standard typically used to review an infringement on a protected liberty interest justified solely under the govern-

(D) To suffer or permit any person, while on the premises of said commercial establishment, to employ any device or covering which is intended to give the appearance of or simulate the genitals, pubic area, buttocks, anus, anal cleft, or cleavage.

3.2. It shall be unlawful for any female person, while on the premises of a commercial establishment located within the boundaries [sic] areas of the City, at which alcoholic beverages are served or offered for sale for consumption on the premises, to expose to public view that area of the human female breast at or below the top of the areola thereof, or to employ any device or covering which is intended to give the appearance or simulate such areas of the female breast as described herein.

3.3. It shall be unlawful for any person, while on the premises of a commercial establishment located within the boundaries of the City, at which alcoholic beverages are offered for sale for consumption on the premises, to expose to public view his or her genitals, pubic area, buttocks, anus, or anal cleft or cleavage, or to employ any device or covering which is intended to give the appearance of or simulate the genitals, pubic area, buttocks, anus or anal cleft or cleavage.

SECTION 4. Penalties.

Any person who shall violate any section of this ordinance shall be guilty of a misdemeanor punishable by a fine not to exceed $500.00 or imprisonment not to exceed sixty (60) days, or both.

SECTION 5. Severability.

It is declared to be the legislative intent that, if any section, sub-section, sentence, clause or provision of this ordinance is held invalid, the remainder of the ordinance shall not be affected.

4. The Court has not spoken dispositively on the amount of constitutional protection that is warranted for nude or partially nude dancing in the absence of an assertion of twenty-first amendment authority by the state, *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 718–19, 101 S.Ct. 2599, 2601–02, 69 L.Ed.2d 357 (1981) (Stevens, J., dissenting), but to the extent that it has addressed the question it has consistently noted that the potential artistic or communicative value of such activity requires that its regulation be evaluated under first amendment standards. *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981) (noting that "nude dancing is not without its First Amendment protections from official regulation"); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 557–58, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975) (affording first amendment protection to the musical production of "Hair"). *But see Doran v. Salem Inn*, 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975) (conceding only that barroom dancing "may involve only the barest minimum of protected expression" and "might be entitled to First and Fourteenth Amendment protection under some circumstances").

ment's police power. *See Grand Faloon,* 670 F.2d at 944.

At trial, the city asserted that its interest in passing the ordinance was to regulate crime. Like the members of this court who evaluated the similar Cocoa Beach ordinance in *Grand Faloon,* 670 F.2d at 949, we agree that the goal of crime prevention is both legitimate and significant enough to justify such a regulation. Where such fundamental interests as the right to free speech are at issue, however, we require more than simply an articulation of some legitimate interest that the city could have had. *See Erznoznik v. City of Jacksonville,* 422 U.S. 205, 217–18, 95 S.Ct. 2268, 2276–77, 45 L.Ed.2d 125 (1975). We will not be satisfied merely because the legislators have mimicked another ordinance that has been found constitutional in another context. *Basiardanes v. City of Galveston,* 682 F.2d 1203, 1213–14 (5th Cir.1982). The government must also show that the articulated concern had more than merely speculative factual grounds, and that it was actually a motivating factor in the passage of the legislation. *See Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 69–73, 101 S.Ct. 2176, 2183–85, 68 L.Ed.2d 671 (1981); *Basiardanes,* 682 F.2d at 1215.

The facts in *Grand Faloon* met all of these tests. After articulating its legitimate concern with crime control, Cocoa Beach showed both that such concern was justified in light of evidence of significant crime problems in topless bars, and that these problems were the focus of the commissioners' attention when considering the ordinance. In this case, once we look behind the city's articulated post-hoc justifications, we find ourselves faced with an easily distinguishable set of facts. At trial the city attempted to produce evidence that its articulated interest in reducing crime was borne out by proof that the city had experienced particular crime problems in connection with the topless bars. The record discloses, however, that in spite of the city attorney's valiant attempts to buttress the city's crime prevention argument, there is no substantial evidence that such a problem in fact existed. All of the city's witnesses who testified concerning the crime problems in topless bars admitted on cross examination that there was no hard evidence of any greater crime problem in topless bars than in non-topless ones. A police officer further admitted that other parts of the city generated substantially more complaints with regard to crimes such as prostitution, drugs and violence. A lieutenant in the Florida Division of Alcoholic Beverages and Tobacco admitted that complaints about the particular crime of B-drinking had already been considerably reduced in Pensacola after the topless dancers had been required to file their names with the police department under the 1982 ordinance. Given the speculative nature of the problem as depicted by this record, we would not be able to accept the district court's findings as to the actual necessity for and effectiveness of the ordinance.

It is not necessary for us to base our decision on the clear error of the district court's findings of fact alone. Even if there were sufficient facts to support the actual efficacy of the ordinance, the city council has failed to establish that the legitimate purpose was actually considered by the council in making its determination. Although this aspect of the inquiry was not reached by the district court, the city directs our attention to the purpose and findings sections of the ordinance as evidence that at least part of the intention behind its passage was the prevention of activities such as prostitution, drug sales and use, and violence. It argues that the existence of this language should end our inquiry, given the restricted nature of our review when matters of legislative intent are at issue.

We agree that "inquiries into [legislative] motives or purposes are a hazardous matter." *United States v. O'Brien,* 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968). Legislative decisions, commonly the product of compromise, are predicated on the consideration of numerous fac-

tors which may or may not all appear in the recorded legislative history. The courts are normally ill-equipped to evaluate the genuineness of legislators' stated purposes. The general judicial reluctance to plumb the legislative psyche does not mandate, however, that we must turn a deaf ear to a record that establishes with unmistakable clarity the actual motives of the legislators in this case. Tapes of the city council's public meetings, records of those meetings, and even admissions by the city's legal counsel at oral argument establish that the debate focused entirely on the morality of topless dancing and the propriety of having such activity going on next to a church. At no time did a member of the public, or a commissioner, mention any problem with B-drinking or any other criminal activity mentioned in the ordinance. In the face of these facts, it is in our view beyond dispute that the ordinance's references to crime were no more than an attempt on the part of the city attorney to provide some means of shielding the ordinance against the bar owners' inevitable constitutional attack based on the city's actual motives.[5] Given the state of the record, therefore, we cannot conclude that the ordinance's articulation of a legitimate governmental interest suffices to show that the city's legislators actually had a legitimate motive in restrict-

ing expression. We hold the ordinance unconstitutional under the first amendment.[6]

REVERSED.

5. The court in *Grand Faloon* concluded that the proper framework for analysis of the Cocoa Beach ordinance was the four-part test enunciated in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) for activity that is part communication and part pure conduct. 676 F.2d at 947. Evaluated under the *O'Brien* standard, the Pensacola ordinance also fails where the Cocoa Beach ordinance did not. Pensacola is unable to show either that the governmental interest is unrelated to the suppression of free expression or that the incidental restriction of first amendment freedoms is no greater than necessary.

6. Even if we were to defer to the wording of the ordinance as the city requests, we would still have to conclude that the city's motives were at best mixed, since the purpose and findings state that topless dancing should be prohibited not only because it leads to crime but also because it involves "moral degradation." Where the legislative body acts with both permissible and

impermissible motives, the proper analysis is that set forth in *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *See Tacynec v. City of Philadelphia,* 687 F.2d 793, 800 (3d Cir.1982). Under that analysis, if the party challenging the constitutionality of an enactment is able to show that protected conduct was a "motivating factor" in the legislators' decision, the government then bears the burden of showing "by a preponderance of the evidence that it would have reached the same decision ... even in the absence of the protected conduct." *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. Given that the plaintiffs have produced so much evidence showing that the overwhelming focus of public indignation was on the activity of topless dancing itself, whereas the city has produced so little evidence that permissible motives were of any concern to the city council, we would have to conclude that the ordinance would never have been passed in the absence of the illegitimate motive.