Jack LEVERETT, et al.,
Plaintiffs-Appellants,

v.

The CITY OF PINELLAS PARK, et al.,
Defendants-Appellees.

No. 84–3867
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Nov. 15, 1985.

———

Donald E. McLawhorn, Tampa, Fla., for plaintiffs-appellants.

Edward D. Foreman and Thomas E. Reynolds, St. Petersburg, Fla., for defendants-appellees.

Before FAY, JOHNSON and CLARK, Circuit Judges.

PER CURIAM:

## I.  FACTS

Appellants in this case are Jack Leverett and Tom Whitaker, officers and sole stockholders of Fresh Start, Inc., a Florida corporation, and Fresh Start, Inc., a Florida corporation d/b/a "Strip Ahoy." Leverett and Whitaker own and operate Strip Ahoy, which offers live entertainment in the form of nude dancing. Strip Ahoy does not have a license to serve alcohol; however, we assume, as did the district court, that patrons of the business are allowed to bring in alcoholic beverages to drink while viewing the dancing.

On September 15, 1984, the City of Pinellas Park enacted two ordinances, § 16–110 and § 16–112, which prohibit nudity in commercial establishments under certain circumstances. Section 16–110 provides that anyone who is "serving food, drink or alcoholic beverages," who is "seating or directing customers to seats" or who is "mingling, coming in contact with, or likely to come in contact with, or in close proximity to customers ... within areas where food, drink or alcoholic beverages are served" may not do so in a nude or semi-nude state. It provides for criminal penalties against "any person maintaining, owning, or operating a business" who "suffer[s], permit[s], require[s] or otherwise direct[s]" these activities to go on as well as against anyone who carries on these activities. It also calls for suspension and/or revocation of the occupational license of any business at which a violation resulting in conviction takes place. Section 16–110 expressly excludes from its coverage any "live act, demonstration, exhibition, performance or entertaining which may be protected by [state and federal] constitutional provisions guaranteeing freedom of expression." Section 16–112 prohibits "nude or semi-nude entertainment in any commercial establishment" and provides for criminal penalties against anyone who engages in such entertainment or who, while maintaining, owning or operating any commercial establishment, suffers, permits, requires or otherwise directs anyone to engage in such entertainment.

These ordinances became effective on or about September 24, 1984, and appellants immediately thereupon ceased offering live entertainment in the form of nude dancing to avoid being arrested and losing the occupational license of the business. At no time have appellants been threatened with prosecution under these ordinances.

On October 11, 1984, appellants Leverett and Whitaker filed a complaint in the United States District Court for the Middle District of Florida against the City of Pinellas Park, Cecil Bradbury as Mayor of Pinellas Park, and David Milchan as Chief of Police of Pinellas Park, challenging the validity of the ordinances and requesting declaratory and injunctive relief under, *inter alia*, 42 U.S.C. § 1983 and the First, Fifth and Fourteenth Amendments to the Constitution of the United States. On October 26, 1984, the district court, after a hearing on appellees' motions to dismiss for lack of standing and failure to state a cause of action as well as on the merits of the First Amendment claims, dismissed the complaint without prejudice on the ground Leverett and Whitaker lacked standing to challenge injury to the corporation, giving appellants leave to refile. Appellants amended their complaint to include as plaintiff the corporation, Fresh Start, Inc., d/b/a "Strip Ahoy." On November 15, 1984, the district court entered an order dismissing the amended complaint with prejudice against Leverett and Whitaker on the ground they lacked standing to pursue their claims and against the corporation on the ground the statutes are facially valid. Appellants filed notice of appeal on December 12, 1984.

## II.  LEGAL ISSUES

On appeal, appellants raise the issue whether Leverett and Whitaker, owners of a commercial establishment that provides nude dancing as entertainment, have standing to challenge the two ordinances in question on First Amendment overbreadth grounds and the issue whether the appel-

lees have met the burden of showing the requisite governmental interest in passing the two ordinances to overcome a First Amendment challenge to their validity.

### A. *Standing.*

The district court dismissed the initial complaint on the ground that an individual shareholder is not authorized to sue for injury to the corporation, citing *Erlich v. Glasner,* 418 F.2d 226 (9th Cir.1969). The complaint was amended to add the corporation, Fresh Start, Inc., as plaintiff, and the amended complaint was dismissed as to the individual plaintiffs, again on the ground they lacked standing. In light of the liberal standing rules applied to persons challenging government action on First Amendment overbreadth grounds, as are appellants in this case, we must reverse the dismissal of the district court as to Leverett and Whitaker.

*Erlich,* upon which the district court relied, did not involve the First Amendment and so was not relevant to the standing issue before the court. A panel of this circuit, in *Solomon v. City of Gainesville,* 763 F.2d 1212 (11th Cir.1985), applied the liberal standing rules utilized in First Amendment challenges of overbreadth and granted standing to the owner of a business seeking to protect a sign distinguishing his place of business. The court in *Solomon* noted that the proper application of standing requirements in the context of an overbreadth challenge focuses on what the ordinance seeks to regulate rather than on what the individual seeks to protect and held that the owner had standing, although he had not alleged any personal injury.

In any case, Leverett and Whitaker have alleged more than the threat of mere economic damage due to their positions as stockholders in a business regulated by the ordinances. They have also shown that they are personally subject to arrest and imprisonment or the imposition of fines under the ordinances and so have alleged

standing in their own right. That criminal proceedings against appellants were not pending at the time this action commenced does not, as appellees suggest, negate their claim of injury arising from the ordinances. (Appellees apparently contend that appellants have not established the "injury in fact" requirement for standing.) The standing of an individual who is not party to state criminal proceedings under a law challenged on First Amendment grounds has been recognized implicitly in the Supreme Court cases holding that such an individual is not barred by federalism considerations from pursuing the First Amendment claim in federal court. *See, e.g., Doran v. Salem Inn,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (federal court may consider request for preliminary injunctive relief in First Amendment case where no state criminal proceedings pending); *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (federal court may consider request for declaratory relief in First Amendment case where no state criminal proceedings pending).[1] Federal courts will not place a plaintiff in the position of choosing between intentionally flouting state law to be eligible for relief and foregoing what he or she believes to be a constitutionally protected activity to avoid criminal prosecution. *Steffel, supra,* 415 U.S. at 463, 94 S.Ct. at 1217.

Nonetheless, where a suit presents such an "anticipatory" challenge, the standing of the plaintiffs will depend on whether the *threat* of prosecution under the ordinance is "genuine" or "imaginary" and "speculative." *Steffel, supra,* 415 U.S. at 460, 476, 94 S.Ct. 1215, 1223; *Hardwick v. Bowers,* 760 F.2d 1202, 1205 (11th Cir.1985); *High Ol' Times v. Busbee,* 621 F.2d 135, 139 (5th Cir.1980). A court may estimate the likelihood of prosecution by examining the interest of the state in enforcing and the interest of the plaintiffs in violating the statute. *Hardwick, supra,* 760 F.2d at 1205; *Inter-*

---

1. These cases resolve appellees' contention that the district court should have abstained from consideration of the merits of this case. "[T]he relevant principles of equity, comity, and federalism 'have little force in the absence of a pend-

ing state proceeding.'" *Steffel, supra,* 94 S.Ct. at 1217 (quoting *Lake Carriers' Assn. v. MacMullan,* 406 U.S. 498, 509, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972)).

*national Society for Krishna Conscious-ness v. Eaves,* 601 F.2d 809, 818 (5th Cir. 1979). Past enforcement patterns may shed light on the state's interest in prosecuting, and the interest of the state need not take the form of a specific threat of prosecution. *Hardwick, supra,* 760 F.2d at 1205. In fact, in some cases, the authentic interest of the plaintiff in engaging in the prohibited conduct can establish standing even though the only threat of enforcement comes from the very existence of the statute. *Hardwick, supra,* 760 F.2d at 1206. A court can be most certain that a constitutional challenge grows out of a genuine dispute where the allegedly unconstitutional statute interferes with the way the plaintiff would normally conduct his or her affairs. *Eaves, supra,* 601 F.2d at 819.

Applying these principles to the case at hand, there can be no doubt that appellants' interest in challenging the statute is authentic. Appellants ceased offering nude dancing at Strip Ahoy because the ordinances at issue directly prohibit this activity. The ordinances thus interfere, directly and continuously, with the way appellants normally conduct their affairs. Moreover, the very activity appellants have been required to forego is the type of activity alleged to be constitutionally protected and therefore impermissibly infringed by the ordinances. "A plaintiff has a stronger claim for standing if, in addition to authenticity of the interest, he or she is best suited to challenge a law." *Hardwick, supra,* 760 F.2d at 1206. Finally, although appellants have received no specific threat of prosecution under the challenged ordinances (and could not have, for they ceased providing nude dancing as soon as the ordinances became effective), they (or their employees) had apparently been arrested and prosecuted not long before the enactment of §§ 16–110 and 16–112 under similar statutes and ordinances, such as Fla.Stat. § 800.03 (exposure of sexual organs) and Pinellas Park Ordinance 16–139 (apparently a predecessor to § 16–110), and hence had reason other than the mere existence of the challenged ordinances to fear prosecution. These past arrests, combined with appel-lants direct, authentic and continuing interest in engaging in the conduct prohibited by the ordinances, lead us to find that appellants have standing to bring this law suit.

In light of the precedent on standing in First Amendment cases and the Eleventh Circuit holdings in *Hardwick* and *Solomon,* we hold that appellants Leverett and Whitaker have standing to challenge the Pinellas Park ordinances on the ground that they are overbroad in violation of the First Amendment.

**B. *Facial Validity of the Ordinances.***

The district court upheld the facial validity of the two ordinances on the ground that "regulation of activity which has demonstrated a capacity to induce breaches of the peace is a traditional and legitimate exercise of a municipality's police power. *Grand Faloon Tavern, Inc. v. Wicker,* 670 F.2d 943 (11th Cir.1982)." The court was satisfied that the City Council had a factual basis upon which to regulate nudity and semi-nudity in establishments where food, drink or alcoholic beverages are served. Evidence of the City's factual basis before the court was limited to the assertions in the ordinances themselves that "competitive commercial exploitation of nudity is adverse to the public health, peace, morals and good order, and ... it is in the best interest of the public health, safety and convenience to restrict such nudity ... as hereinafter set forth," § 16–110; that the "presence of live nude or semi-nude entertainment at commercial establishments generates violent and unruly behavior and moral degradation among the patrons of such commercial establishments ... [which] poses a threat to the safety and well-being of those in attendance, as well as those in the surrounding community," § 16–112; and that "nuisances, criminal and otherwise disruptive activity [sic] take place when patrons depart from such commercial establishments ... placing an enormous .and disproportionate burden on the law enforcement officials of the City...." § 16–112.

■ Considering the two ordinances separately, we affirm the district court's order as to § 16–110, which prohibits nudity or semi-nudity when serving food and drink and when coming into close proximity to customers in an area where food and drink is served. We emphasize that this holding turns on our finding that this ordinance does not on its face govern activity protected by the First Amendment. The ordinance does not, as appellants seem to assume, prohibit protected expression such as nude dancing. Section 16–110 expressly excludes from its ambit all such protected expression. As passage of the ordinance was an ordinary exercise of governmental police power that did not implicate First Amendment values, its necessity is sufficiently established by the findings of the City Council contained in the language of the ordinance.

■ Such limited evidence of the need for the ordinance normally would not be sufficient to satisfy the "stricter standard typically used to review an infringement on a protected liberty interest justified solely under the government's police power." *Krueger v. City of Pensacola*, 759 F.2d 851 (1985). It is under this "stricter standard" that § 16–112 must be struck down.[2]

This ordinance, which prohibits nude or semi-nude entertainment in any commercial establishment, clearly includes within its coverage nude dancing. Because some forms of nude dancing fall under the protection of the First Amendment, *California v. LaRue*, 409 U.S. 109, 116, 93 S.Ct. 390, 396, 34 L.Ed.2d 342 (1972); *Krueger, supra*, 759 F.2d at 854 and n. 4, appellees must come forth with "more than simply an articulation of some legitimate interest that the city could have had" to justify its prohibition. Where a fundamental interest such as freedom of expression is regulated,

the City must also show that the legitimate concern it articulates has "more than merely speculative factual grounds, and that it was actually a motivating factor in the passage of the legislation." *Krueger, supra*, 759 F.2d at 855.

In this case, the City made no showing as to the factual basis for its articulated concerns and the motivation for passage of § 16–112 beyond the conclusions stated in the ordinance itself. While the district court was satisfied with this minimal showing, we hold that *Krueger* requires more than a conclusory assertion of the factual basis and motivation underlying an ordinance that treads upon First Amendment rights. Because the court in *Krueger* had before it independent evidence that the City's alleged concerns were not factually justified and did not actually motivate passage of the municipal ordinance at issue (prohibiting nude dancing at establishments serving alcohol), it did not reach the question whether statements in the purpose and findings sections of an ordinance might constitute sufficient evidence of factual basis and motivation upon which to uphold an ordinance in the face of a First Amendment challenge. Nonetheless, the showing required by *Krueger* would serve little purpose if it could be made by simply pointing to an assertion of concern and motivation unsupported by any factual record. Such a minimal showing is an insufficient safeguard for fundamental constitutional values. The statement of factual basis and motivation contained in § 16–112 does not justify its infringement on protected expression.[3]

Furthermore, the ordinance's statement of findings refers to the "moral degradation" generated by nude and semi-nude entertainment, thereby indicating that imper-

---

**2.** The parties spent much of their effort in this case arguing about the significance of the fact that alcohol is consumed at Strip Ahoy. Section 16–112, however, applies to nude or semi-nude entertainment in *any* "commercial establishment." The ordinance clearly does not regulate protected expression as an incident to the regulation of alcohol. That Florida may have delegated to municipalities its power under the Twenty-first Amendment, *City of Daytona Beach*

*v. Del Percio*, 476 So.2d 197 (Fla.1985), is therefore of no help to the City in this case.

**3.** The *Grand Faloon* case cited by the district court is not to the contrary, for the city in that case presented ample evidence that its articulated concern was based on a significant crime problem and that this problem actually motivated passage of the ordinance there at issue.

missible motives entered into the City Council's decision to prohibit such entertainment. Where a legislative body acts with impermissible as well as permissible motives, it must show by a preponderance of the evidence that it would have reached the decision to pass the legislation even without the impermissible motive. *Krueger, supra,* at 856 n. 6. The City here has made no such showing. Because the City has failed to carry its burden of justifying the infringement of protected expression, we hold that § 16–112 is overbroad and unconstitutional.

Therefore, as to the issues of the standing of the individual plaintiffs and the facial validity of § 16–112, we REVERSE. As to the constitutionality of § 16–110, we AFFIRM.

AFFIRMED in part and REVERSED in part.