Terry JORGENSON and T.D.J., Inc., a
Florida Corporation, d/b/a
Porky's, Plaintiffs,

v.

COUNTY OF VOLUSIA and Edwin H.
Duff, II, in his official capacity as Sheriff of Volusia County, Defendants.

No. 86–41–CIV–ORL.

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 17, 1986.

Eric A. Latinsky, Daytona Beach, Fla., Fred W. Fendt, Deland, Fla., for plaintiffs.

Daniel D. Eckert, Deland, Fla., for defendants.

## ORDER

GEORGE KENDALL SHARP, District Judge.

Plaintiffs have filed a complaint, and supporting memorandum of law with appendix requesting a temporary restraining order, permanent injunction and declaratory judgment with respect to the enforcement of Volusia County Ordinance No. 86–1, which prohibits nude or semi-nude entertainment in commercial establishments at which alcoholic beverages are offered for sale or consumption on the premises. Plaintiff Jorgenson is the sole stockholder of Florida corporation T.D.J., Inc., which owns and operates a business establishment known as "Porky's," located at 2400 International Speedway Boulevard, De-Land, in an unincorporated area of Volusia County, Florida. Porky's, which opened on December 2, 1985, is licensed by the State of Florida to sell alcoholic beverages for consumption on the premises, and it also provides, as entertainment, female dancers who perform topless. Plaintiffs represent that the topless dance presented at Porky's is nonobscene, that it is available to consenting adults only, and that it is protected

by the First Amendment to the United States Constitution.

Citizens of the community, offended by the opening of Porky's, amassed what plaintiffs have described in their memorandum as a "public outcry." This community response was characterized not only by picketing and general complaining, but also the Greater DeLand Ministerial Association adopted a resolution requesting the Volusia County Council to pass an ordinance banning topless dancing and other public sexual exploitation in all unincorporated areas of the county. On December 5, 1985, the County Council addressed the community repercussions from the opening of Porky's, the transcript of which is part of plaintiffs' appendix. Essentially, the citizens present expressed concern for the moral welfare of the community because of the potential for immoral and criminal conduct engendered by a topless dancing establishment. Similar experiences of other Florida cities, such as Orlando and Daytona Beach, were specifically mentioned.

On December 9, 1985, the County Council passed Ordinance No. 86-1, effective within the unincorporated areas of Volusia County, known in short form as the Adult Entertainment Ordinance of Volusia County, Florida. Section 2 of the ordinance, "Legislative Authorization," states that it is:

enacted in the interest of the public health, peace, safety, morals and general welfare of the citizens and inhabitants of Volusia County, Florida, pursuant to the Florida Constitution and laws of the State of Florida, Sec. 102 of the Volusia County Chapter, and the authority of the County to regulate the sale and consumption of alcoholic beverages, pursuant to the Twenty-First Amendment to the Constitution of the United States.

Section 4, "Findings of Fact," states that the County Council finds that:

[e]vidence has been propounded that indicates that nudity and sexual conduct and depiction thereof coupled with alcohol in public places begets undesirable behavior, and that prostitution, attempted rape, rape, murder, and assaults on police officers have occurred in and around establishments dealing in alcoholic beverages where nude and sexual conduct and depiction thereof is permitted.

Section 6, the definitional section, defines "[a]lcoholic beverages" to be beverages containing more than one percent alcohol by weight and "[e]stablishment dealing in alcoholic beverages" to be:

[a]ny business or commercial establishment ... [public or private] including those licensed by the state for sale and/or service of alcoholic beverages, and any bottle club; hotel; motel; restaurant; night club; country club; cabaret; meeting facility utilized by any religious, social, fraternal or similar organization; business or commercial establishment where a product or article is sold, dispensed, served or provided with the knowledge, actual or implied, that the same will be, or is intended to be mixed, combined with or drunk in connection or combination with an alcoholic beverage on the premises of said business or commercial establishment; or business or commercial establishment where the consumption of alcoholic beverages is permitted.

Section 7 prohibits specific sexual activity and display, and, in relevant part, pertains to topless dancing in establishments "dealing in alcoholic beverages:"

b. No female person shall expose to public view any portion of her breast below the top of the areola or any simulation thereof in the establishment dealing in alcoholic beverages.

\* \* \* \* \* \*

d. No person maintaining, owning, or operating an establishment dealing in alcoholic beverages shall suffer or permit any female person to expose to public view any portion of her breasts below the top of the areola or any simulation thereof within the establishment dealing in alcoholic beverages.

Section 8 provides as penalties for violators of the ordinance a fine not greater than $500.00 or imprisonment in county jail no

longer than 60 days or both. § 125.69, Fla.Stat. (1985).

Section 9 provides for the severability of any portion of the ordinance found to be invalid or unconstitutional by a court of competent jurisdiction. Pursuant to section 10 of the ordinance, it will become effective on January 19, 1986. Plaintiffs represent that they and their employees will suffer the threat of arrest on or prior to January 19, 1986, should a temporary restraining order and preliminary injunction not issue.

Although the United States Supreme Court has recognized that "nude dancing is not without its First Amendment protections from official regulation," *Schad v. Mount Ephraim*, 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981), in *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981), it addressed "the power of a State to prohibit topless dancing in an establishment licensed by the State to serve liquor." While acknowledging that such dancing has the "barest minimum" First Amendment protection, the Court recognized that the broad powers of the States to regulate the sale of liquor under the Twenty-first Amendment outweighed any First Amendment interest. *Id.* at 716–17, 101 S.Ct. at 2601 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932–33, 95 S.Ct. 2561, 2568–69, 45 L.Ed.2d 648 (1975)); *California v. LaRue*, 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972) ("While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals."). *Bellanca* held that:

> Whatever artistic or communicative value may attach to topless dancing is overcome by the State's exercise of its broad powers under the Twenty-first Amendment. Although some may quarrel with the wisdom of such legislation and may consider topless dancing a harmless diversion, the Twenty-first Amendment makes that a policy judgment for the state legislature, not the courts.

452 U.S. at 718, 101 S.Ct. at 2602.

Following *Bellanca*, the Eleventh Circuit decided two Florida cases involving municipal ordinances prohibiting topless dancing in commercial establishments where alcoholic beverages were offered for sale for consumption on the premises, similar to Volusia County Ordinance 86–1. *Krueger v. City of Pensacola*, 759 F.2d 851, 853–54 n. 3 (11th Cir.1985); *Grand Faloon Tavern, Inc. v. Wicker*, 670 F.2d 943, 944–45 n. 2 (11th Cir.), *cert. denied*, 459 U.S. 859, 103 S.Ct. 132, 74 L.Ed.2d 113 (1982) (City of Cocoa Beach). In both cases, *Bellanca* and Twenty-first Amendment analysis were distinguished based upon *Board of County Commissioners of Lee County v. Dexterhouse*, 348 So.2d 916, 918 (Fla.App.1977), *aff'd*, 364 So.2d 449 (Fla.1978), which held that, in Florida, this Twenty-first Amendment regulatory authority had not been delegated to municipalities. *Krueger*, 759 F.2d at 854–55 (citing *Grand Faloon*, 670 F.2d at 944); *Grand Faloon*, 670 F.2d at 944 n. 1. These cases, therefore, were decided "under the stricter standard typically used to review an infringement on a protected liberty interest justified solely under the government's police power," or the four-part test enunciated in *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968) (Although incidentally impacting on the First Amendment, a governmental regulation is sufficiently justified "[1] if it is within the constitutional power of the government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on … First Amendment freedoms is no greater than is essential to the furtherance of that interest."). *Krueger*, 759 F.2d at 854–56, 856 n. 5; *see Grand Faloon*, 670 F.2d at 947–52. *Grand Faloon* held that the Cocoa Beach ordinance met the *O'Brien* test, finding

substantial documentation that there was increased criminal activity, a significant governmental interest, in establishments that offered both alcoholic beverages and topless dancing and, consequently, upheld the ordinance. 670 F.2d at 947–52. In contrast, *Krueger* found allegations of increased crime at topless bars to be speculative and that "[e]ven if there were sufficient facts to support the actual efficacy of the ordinance, the City Council has failed to establish that the legitimate purpose was actually considered by the council in making its determination." 759 F.2d at 855, 856. These cases demonstrate the rigor of the *O'Brien* standard which is required when an impacted First Amendment liberty is justified solely under a government's police power as opposed to Twenty-first Amendment analysis.

On August 30, 1985, the Supreme Court of Florida held that a Daytona Beach ordinance prohibiting topless dancing in establishments dealing in alcoholic beverages, similar to Volusia County Ordinance No. 86–1 and the ordinances in *Grand Faloon* and *Krueger*, was valid under *Bellanca* and the Twenty-first Amendment in which state police power is inherent, and that it was neither vague nor overbroad. *City of Daytona Beach v. Del Percio*, 476 So.2d 197, 199–206 (Fla.1985). Addressing the delegation permitted under the Twenty-first Amendment, *Del Percio* found that the *Bellanca* holding that "[t]he state's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs" was applicable to Florida cities and counties, based upon the Florida Constitution and statutes. *Id.* at 201 (quoting *Bellanca*, 452 U.S. at 717, 101 S.Ct. at 2601.) Stating that topless dancing is nonobscene, thereby overcoming the potential obstacle of the inability of counties and municipalities to regulate obscene exhibitions, which would remove First Amendment protection, *Del Percio*, emphatically stated: "*Florida municipalities (and counties, see Fillingim v. State*, 446 So.2d 1099 (Fla. 1st DCA 1984)) *thus have the authority to exercise the regulatory pow-*

*er of the twenty-first amendment recognized in New York State Liquor Authority v. Bellanca.*" (citation omitted) *Id.* at 201 (emphasis added). Therefore, this Court finds the Florida constitutional language as interpreted by the Florida Statutes and enunciated by the Supreme Court of Florida equally applicable to county legislation banning topless dancing in establishments dealing in alcoholic beverages. Although the *Bellanca*/Twenty-first Amendment rationale was sufficient to support municipal and county authority to prohibit topless dancing in bars, *Del Percio* fortified this holding by finding such regulation also to be available under the police power, which is inherent in the Twenty-first Amendment. *Id.* at 203–05.

With respect to vagueness, *Del Percio* quotes *Broadrick v. Oklahoma*, 413 U.S. 601, 608, 93 S.Ct. 2908, 2913–14, 37 L.Ed.2d 830 (1973) that " 'words inevitably contain germs of uncertainty' but when regulations 'are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, [there is no] sacrifice to the public interest.' " *Id.* at 200. In their complaint, plaintiffs have asked this Court to issue a declaratory decree stating "how much exposure of the female breast is necessary to constitute a violation of the ordinance." Reference to section 7 b. and d. of Volusia County Ordinance 86–1 set out above is as clear to this Court as was the similarly worded ordinance in *Del Percio* to the Florida Supreme Court: "The plain meaning of the statute is, as the City suggests, that no portion of the breast directly or laterally below the top of the areola may be exposed to public view." *Del Percio*, 476 So.2d at 200.

Likewise, finding the overbreath doctrine inapplicable, *Del Percio* stated:

> In the first amendment area, this overbreadth argument is permitted because of the judicial assumption that an overbroad statute may well have a chilling effect on protected expression. An overbroad regulation may not be enforced until the scope of regulation is narrowed

by a limiting construction or partial invalidation to remove the threat to protected expression. "Application of the overbreath doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort." (quoting *Broadrick v. Oklahoma*, 413 U.S. at 613 [93 S.Ct. at 2916]).....

However, the ordinance doesn't chill such behavior [topless dancing], it prohibits it. And this prohibition of a very narrow range of expression, subject only to the barest minimum of first amendment protection, seems well within the scope of permissible regulation found in the United States Supreme Court's *Bellanca* decision. The "strong medicine" of the overbreath doctrine is not available to cure the chill.

*Del Percio*, 476 So.2d at 202, 203.

Following *Del Percio*, the Eleventh Circuit decided *Leverett v. City of Pinellas Park*, 775 F.2d 1536 (11th Cir.1985), striking a municipal ordinance that prohibited "nude or semi-nude entertainment in any commercial establishment" as being unconstitutional and overbroad. *Id.* at 1537, 1540–41. *Leverett*, however, is distinguishable because the business establishment involved, which offered nude dancing, was not licensed to serve alcohol, although patrons, apparently, were allowed to bring in alcoholic beverages for consumption while viewing the dancing. *Id.* at 1537. In a telling footnote, the *Leverett* court stated:

The parties spent much of their effort in this case arguing about the significance of the fact that alcohol is consumed at Strip Ahoy. Section 16–112, however, applies to nude or semi-nude entertainment in *any* "commercial establishment." *The ordinance clearly does not regulate protected expression as an incident to the regulation of alcohol.* That Florida may have delegated to municipalities its power under the Twenty-first Amendment, *City of Daytona Beach v. Del Percio*, 476 So.2d 197 (Fla. 1985), is therefore of no help to the City in this case.

*Id.* at 1540 n. 2 (emphasis in original and added).

*Leverett*, therefore, did not analyze or strike the ordinance under the Twenty-first Amendment but rather under the "stricter standard" whereby a protected interest can be impinged upon only if justified by the government's police power. *Id.* at 1540. Under that stringent standard, *Leverett*, as *Krueger*, found the city's "conclusory assertion of the factual basis and motivation" underlying the ordinance to be insufficient to tread upon a First Amendment right. *Id.* The Eleventh Circuit clearly indicated that the analysis would have been different under the Twenty-first Amendment regulation of protected expression incident to regulation of alcohol. *Id.* at n. 2.

In light of *Del Percio*, a case virtually identical to that of plaintiffs, and the Florida Constitution and statutory interpretation enunciated by the Florida Supreme Court supporting *Bellanca* and Twenty-first Amendment analysis where regulation of alcohol is concerned, this Court finds it inconceivable that plaintiffs would analogize their case with *Grand Faloon* and *Krueger* since these cases were decided before *Del Percio* when another state-court case, dictating the *O'Brien* test, was operable. The Florida Supreme Court has stated plainly and blatantly that *Bellanca* and the Twenty-first Amendment are now the current analysis for cases involving ordinances prohibiting topless dancing in establishments dealing in alcohol on the premises. A legislative decision has been made, now upheld by the judicial decision in *Del Percio*.

 The Court finds it reprehensible that plaintiffs' counsel, particularly, Mr. Latinsky, omitted *Bellanca* and *Del Percio* from the supporting memorandum of law, especially, when he personally represented respondents in *Del Percio*. *Del Percio*, 476 So.2d at 199. It is abundantly evident to the Court that plaintiffs' counsel are aware of the Florida Supreme Court decision and that they deliberately chose not to cite that case and *Bellanca*, the controlling United States Supreme Court case, let

**1548**

alone attempt to distinguish them. It is furthermore obvious to the Court that plaintiffs' counsel urged the Court to be guided by *Krueger* and *Leverett* because, in those cases, the ordinances prohibiting topless dancing were not upheld, irrespective of the fact that the former was decided before *Del Percio* and the latter did not involve an establishment which sold alcoholic beverages, necessarily removing it from Twenty-first Amendment analysis.

Plaintiffs' counsel have violated Rule 11 of the Federal Rules of Civil Procedure wherein an attorney, by his/her signature on a pleading, certifies "that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose...." In a similar violation of Rule 11, *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 103 F.R.D. 124 (N.D.Cal.1984), the court sanctioned plaintiff's counsel for failure to cite recent and controlling authority in the jurisdiction directly mandating the opposite result from a former, never overruled, holding relied upon by plaintiffs. The Court stated:

> The duty of candor is a necessary corollary of the certification required by Rule 11. A court has a right to expect that counsel will state the controlling law fairly and fully; indeed, unless that is done the court cannot perform its task properly. A lawyer must not misstate the law, fail to disclose adverse authority (not disclosed by his opponent), or omit facts critical to the application of the rule of law relied on.

*Id.* at 127.

The Court recognizes that this failure to cite and/or distinguish controlling authority is not in a trial context and that defendants have filed a memorandum in opposition to plaintiffs' motion for a temporary restraining order citing the correct authority. Nevertheless, the Court views this omission by plaintiffs' counsel as so misleading and unethical as to come within the purview of Disciplinary Rule 7–106(B)(1) of the Code of Professional Responsibility, which states that "[i]n presenting a matter to a tribunal, a lawyer shall disclose: (1) Legal authority in the controlling jurisdiction known to him to be directly adverse to the position of his client...." *See Piambino v. Bailey*, 757 F.2d 1112, 1131 n. 44 (11th Cir.1985). A temporary restraining order is characteristically an extraordinary, ex parte proceeding, which makes accurate representation of the facts and law of crucial importance to the Court. Furthermore, ABA Model Rule of Professional Conduct 3.3 states that "[a] lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal...." The accompanying comment makes plain that "[l]egal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal." *See Golden Eagle*, 103 F.R.D. at 127–28.

In addition to the legal omissions of plaintiffs' counsel, they also were procedurally deficient. Local Rule 4.05, which incorporates Rule 65(b) of the Federal Rules of Civil Procedure, sets forth the requirements for obtaining a temporary restraining order. Specifically, Local Rule 4.05(b)(1)–(4) clearly describe exactly what must be filed and represented to the Court. Plaintiffs did not file a separate motion for temporary order in accordance with Local Rule 4.05(b)(1). Furthermore, both Local Rule 4.05(b)(2) and (b)(4) require a showing of imminent irreparable injury disallowing notice in the verified complaint or accompanying affidavits and in the supporting legal memorandum. Whatever imminence has occurred is plaintiffs own creation and the Court is not sympathetic to their position. Volusia County Ordinance No. 86–1 was passed on December 9, 1985, and plaintiffs have delayed over a month until January 13, 1986, to file their request for a temporary restraining order, claiming that they will be irreparably injured when the ordi-

nance becomes effective on January 19, 1986. Plaintiffs' speculative representations that Porky's will cease business if the ordinance is enforced is unconvincing to the Court, given the fact plaintiffs' female dancers can continue to entertain in appropriate clothing designated by the ordinance. The formerly topless bar and client of Mr. Latinsky in Daytona Beach has obviously managed to survive as plaintiffs' counsel should be well aware, despite enforcement of a similar ordinance in that city.

In light of the controlling case law, plaintiffs' allegation that they will ultimately prevail on the merits of their claim, pursuant to Local Rule 4.05(b)(4)(i) is unlikely. The concerns of potential harm that might be caused to opposing parties and to the public interest of Local Rule 4.05(b)(4)(iii) and (iv) merge given the strong, adverse community reaction to the opening of Porky's. The County Council, as the citizens elected representatives, has legislated on behalf of the community. The harm that the community sought to prevent will continue to occur if the ordinance were not enforced. "[T]he city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect." *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 71, 96 S.Ct. 2440, 2452–53, 49 L.Ed.2d 310 (1976).

Accordingly, plaintiffs' request for a temporary restraining order is DENIED. Pursuant to Rule 11 of the Federal Rules of Civil Procedure, the Court imposes the sanction of a $500.00 fine on plaintiffs' counsel for their misleading and unethical representation of the controlling law in Florida regarding an ordinance governing sexual display in establishments dealing in alcoholic beverages legislated under the Twenty-first Amendment. The hearing on the preliminary injunction, which has been noticed for January 27, 1986, at 12:00 p.m., will be restricted to examination of portions of Volusia County Ordinance 86–1 which plaintiffs believe to be vague or overbroad.