**WHITE'S PLACE, INC., d/b/a The Gold Club, Plaintiff,**

v.

**Nathaniel GLOVER, in his Official Capacity as Sheriff of Jacksonville, the City of Jacksonville, a Florida Municipal Corporation, and the Honorable Charles O. Mitchell, Jr., in his Official Capacity, Defendants.**

No. 97–930–Civ–J–20C.

United States District Court, M.D. Florida, Jacksonville Division.

Aug. 27, 1997.

Lawrence G. Walters, Doran, Walters, Rost, Selter & Wolfe, Daytona Beach, FL, David A. Wasserman, Law Office of David A. Wasserman, Winter Park, FL, for plaintiff.

Tracey I. Arpen, Jr., General Counsel's Office, City of Jacksonville, Jacksonville, FL, for defendants.

### ORDER

SCHLESINGER, District Judge.

Before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. No. 4, filed August 7, 1997). Defendants City of Jacksonville ("City") and Sheriff Nathaniel Glover ("Sheriff") filed a response in opposition on August 13, 1997. See Doc. No. 12. On August 14, 1997, the Court heard argument on this motion, at which time Defendant the Honorable Charles O. Mitchell, Jr. ("Judge Mitchell") filed his response in opposition.[1] See Doc. No. 17. Plaintiff seeks a preliminary injunction against Defendants City and Sheriff, prohibiting them from enforcing the Jacksonville Adult Entertainment and Services Code ("Ordinance Code")—which Plaintiff argues is unconstitutional—against Plaintiff. The stated purpose of the Ordinance Code is to combat the undesirable secondary effects of nude dancing: prostitution, public masturbation, lewd and lascivious conduct, and sexual harassment. Plaintiff also asks the Court to prohibit enforcement of a Temporary Injunction issued by Defendant Judge Mitchell and to prohibit Defendants City and Sheriff from continued bad faith harassment against Plaintiff.

Plaintiff White's Place is a Florida Corporation which operates a business called "The Gold Club," a show bar located at 320 General Doolittle Drive in Jacksonville, Florida, on Jacksonville Port Authority ("JPA") property. Complaint (Doc. No. 1, filed July 28, 1997) at ¶ 2. Plaintiff obtained this business on October 27, 1995 by way of an assignment of a lease originally entered into between the JPA and The 94th of Jacksonville, Inc. Plaintiff allegedly selected this property, in part, because of an apparent exemption to the Ordinance Code, § 150.611(a), allowing adult entertainment on City owned property; in the lease, the JPA is stated to be a subdivision of the City. See Affidavit of Mike Tomkovich ("Owner") in Support of Motion for Preliminary Injunction ("Tomkovich Aff.") attached as Exhibit 2 in Attachments to Motion (Doc. No. 5, filed August 7, 1997) at ¶ 5. Plaintiff initially provided its customers with dancing by performers wearing evening gowns and/or swimsuits. See Complaint at ¶ 21. Defendants raided The Gold Club on several occasions, arresting performers and managers, for what are alleged by the Plaintiff to be mere "costume violations."[2]

Following a police raid that occurred in January, 1997, Judge Derke of the County Court of the Fourth Judicial Circuit in and for Duval County, Florida found that the property was, in fact, City property and that, therefore, The Gold Club's performers were immune from prosecution under the Ordi-

---

1. Within Defendant Judge Mitchell's response is a Motion to Dismiss.

2. The arrest reports, however, indicate that the performers were doing more than just exposing their flesh. See Arrest and Booking Reports *attached to* Affidavit of Kenneth R. Fox *in* Defen-

dant's Notice of Filing Affidavits (Doc. No. 14, filed August 13, 1997) (stating that performers rubbed their buttocks in the customers' crotches, placed their breasts in the customers' faces, and placed their faces in the customers' crotches).

nance Code. *See* Exhibit E ("Order Granting Defendant's Motion to Dismiss" *in State of Florida v. C. Harris,* Case No. 97–5508) *attached to* Complaint. As a result of this decision—and taking advantage of the apparent applicability of the Ordinance Code exemption—Plaintiff began providing nude entertainment.[3] Two months later, on April 3, 1997, Judge Derke conducted a rehearing of Defendant's Motion to Dismiss and reversed her previous ruling, finding that the JPA and City were separate entities, notwithstanding representations made in the lease. *See* Exhibit F ("Order on Defendant's Motion to Dismiss" *in State of Florida v. Marie A. Altidor, Donna L. Askwith, et al.) attached to* Complaint. Judge Derke warned as follows:

> [W]ith the entry of this Order, Defendants are now on notice that the Jacksonville Port Authority's representation that it is a political subdivision of the City of Jacksonville is not correct. Defendants are also on notice that the property on which the Gold Club is operating is not exempt from the provisions of the Municipal ordinance and any future prohibited conduct on the subject property would constitute a violation and subject the actors to criminal sanctions.

Plaintiff's motion to strike Judge Derke's second Order was denied. Defendants in this case subsequently sought a temporary injunction in state court to stop The Gold Club from providing adult entertainment on the premises. Defendant Judge Mitchell granted the motion for a temporary injunction and entered an Order temporarily enjoining Plaintiff "from maintaining, operating, using or keeping the premises at 320 Doolittle Drive, Jacksonville, Florida for the purpose of an adult entertainment facility, as defined in Sections 656.1601, and 150.103(c), Ordinance Code, without having first obtained proper zoning and an adult entertainment license from the City." Exhibit H *attached to* Complaint. However, whether The Gold Club is on City property no longer matters. *See infra* note 7. The exemption

Plaintiff seeks to assert to relieve it from the Ordinance Code is no longer available.

Plaintiff summarizes Defendant Sheriff's bad faith conduct and harassment as follows:

> Regular, repeated prosecutions based on an unconstitutional Ordinance which it knew or should have known was constitutionally defective; Placing marked police car units at regular intervals at the business premises of Plaintiff White's Place with the intent to intimidate employees and performers and to scare off potential customers; Pretextual detentions of the owner of Plaintiff White's Place for the sole purpose of intimidating Plaintiff out of business; Full custodial arrests of performers for municipal Ordinance violations involving excessive use of force; Sexual harassment of female performers by male deputies; Threats and intimidation directed at Plaintiff's counsel; Instructing other agencies to pursue criminal, civil, and/or administrative charges against Plaintiff to deplete Plaintiff's resources and drive Plaintiff out of business; Failure to respond to legitimate public records requests; Following Plaintiff's representatives and counsel without justification and for the purpose of intimidation; and disseminating ·defamatory statements about Plaintiff's business and owners without foundation in law or fact and with reckless disregard of the truth or falsity of the statements.

Plaintiff summarizes Defendant City's bad faith conduct and harassment as follows:

> Seeking and obtaining a temporary injunction based on an Ordinance which it knew or should have known was unconstitutional; Pressuring other agencies, entities and subdivisions of government including Defendant Sheriff, the Division of Alcoholic Beverages and Tobacco, and the Jacksonville Port Authority into pursuing hypertechnical enforcement of laws, codes, statutes and contractual provisions against Plaintiff in violation of Plaintiff's right to free expression and association; Failing to respond to legitimate public records requests; Enacting ordinances constituting

---

**3.** Plaintiff does not explain why it did not seek to provide nude entertainment prior to January,

1997. It could have, for example, brought an earlier declaratory judgment action.

an unconstitutional prior restraint on free speech and expression; Making defamatory statements about Plaintiff's owner and business with the intent to injure Plaintiff and with reckless disregard to the truth or falsity of the statements; and Interfering with business transactions between Plaintiff and others in violation of Plaintiff's right to free association.

Plaintiff claims that these actions were motivated by a desire to harass Plaintiff based on Plaintiff's alleged affiliation with and control by the Outlaws, a group purported to be a dangerous motorcycle gang. Notwithstanding this seemingly imposing list of alleged misconduct by the Defendants, Plaintiff's Motion which seeks extraordinary relief at this time must be **DENIED** for the reasons stated herein.

### DISCUSSION

In *Huffman v. Pursue*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the Supreme Court of the United States held that the principle of abstention found in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which commands that the federal courts are not to intervene in state court *criminal* proceedings except under extraordinary circumstances, applies with equal force to *civil* proceedings such as the present one.*Huffman*, 420 U.S. at 607, 95 S.Ct. at 1209–10.

In *Huffman*, appellants sheriff and prosecuting attorney sought to close a movie theater specializing in pornographic films. To close the theater, appellants had relied upon the Ohio public nuisance statute, which provides that a place which exhibits obscene films is a nuisance and that such a place shall be closed for up to a year. Nuisance proceedings brought by the prosecutor in state court were successful: the Court of Common Pleas of Allen County ordered that the theater be closed. Rather than appeal that decision in the state court, the theater's new owner brought an action in federal district court—the United States District Court for

the Northern District of Ohio—alleging that the statute was unconstitutional and unenforceable. *Huffman*, 420 U.S. at 595–99, 95 S.Ct. at 1204–06.

The District Court [4] found that the statute constituted an overly broad prior restraint on First Amendment rights and entered a permanent injunction against enforcing that portion of the state court order closing the theater to films that had not been determined to be obscene. On appeal, appellants raised, among other issues, the applicability of *Younger v. Harris*, arguing that the District Court should not have intervened. *Huffman*, 420 U.S. at 599, 95 S.Ct. at 1205–06.

In explaining the basis for the *Younger* abstention doctrine, the Supreme Court in *Huffman* recognized that

> there had ... long existed a strong judicial policy against federal interference with state criminal proceedings .... [ ]based in part on the traditional doctrine that a court of equity should stay its hand when a movant has an adequate remedy at law, and that it 'particularly should not act to restrain a criminal prosecution.' ... [T]his doctrine 'is reinforced by an even more vital consideration,' an aspect of federalism which we described as 'the notion of comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'

*Huffman v. Pursue*, 420 U.S. at 600–01, 95 S.Ct. at 1206–07.

The Supreme Court cautioned that "when federal courts are confronted with requests for such relief [i.e., an injunction to prevent the enforcement of an allegedly unconstitutional ordinance when the ordinance is being relied upon in state court proceedings], they should abide by standards of restraint that

---

4. As noted by the Supreme Court, "[s]ince the complaint was directed against the constitutionality of a state statute, a three-judge court was convened." 420 U.S. at 598–99, 95 S.Ct. at

1205. Decisions of this type of panel are appealable to the Supreme Court of the United States. *See* 28 U.S.C. § 1253.

go well beyond those of private equity jurisprudence." *Id.* at 603, 95 S.Ct. at 1208. The Court concluded that litigants "should not be permitted the luxury of federal litigation of issues presented by ongoing state proceedings, a luxury which ... is quite costly in terms of the interests which Younger seeks to protect." *Id.* at 605–06, 95 S.Ct. at 1209.

The Court in *Huffman* recognized two exceptions to this doctrine of abstention. The district court may intervene in state court proceedings where it finds either that "the state proceeding is motivated by a desire to harass or is conducted in bad faith" or that "the challenged statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Id.* at 611, 95 S.Ct. at 1212.

 Plaintiff acknowledges that it must demonstrate why this Court should not abstain from enjoining Judge Mitchell's Order. The Plaintiff, however, at this time has failed to do so. It is clear that the Plaintiff at this time has not shown that the Ordinance Code is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph." For example, this Court has upheld provisions of the Ordinance Code in the face of constitutional challenges. *See, e.g.,* Memorandum Opinion (Doc. No. 116, filed August 25, 1997, *in Lady J. Lingerie, Inc., et al. v. City of Jacksonville,* 973 F.Supp. 1428); Order (Doc. No. 60, filed June 19, 1996, *in Lady J. Lingerie*); *see also* Preliminary Injunction Order (Doc. No. 18, filed March 10, 1995, *in Lady J. Lingerie*). Further, Plaintiff does not attempt to argue in this case that the Ordinance Code is *flagrantly unconstitutional in every clause;* rather, Plaintiff takes issue only with the penalty provisions (found in sections 150.609 and 150.510, arguing that they violate the Eighth Amendment) and the zoning provisions (arguing that they violate the First Amendment). Thus, Plaintiff cannot avoid the effect of *Younger* using the first exception.

Rather than argue the impossible, Plaintiff has attempted to demonstrate that the state proceeding is motivated by a desire to harass and is conducted in bad faith. But the Court is not persuaded that the Defendants' actions rise to that level.

Plaintiff must show that the Defendants were motivated by a desire to harass or that they conducted the state proceedings in bad faith: these focus on the Defendants' intent. Plaintiff asks this Court to infer intent from the various actions of the Defendants. But the Court believes that the Defendants have shown that they were just as likely motivated by legitimate reasons for their actions. For example, at this preliminary stage of the proceedings without the benefit of a trial, and in light of the Court's decision two days ago in *Lady J. Lingerie* that several of the challenged provisions survive constitutional scrutiny, repeated prosecutions based on a constitutionally valid ordinance is not bad faith conduct or harassment: it is simply upholding the law. *See Penthouse International, Ltd. v. Webb,* 594 F.Supp. 1186, 1194 (N.D.Ga.1984) ("It does not amount to bad faith for a prosecutor to make distribution of obscene materials a high priority in his or her prosecutorial agenda.... There is no showing here that Webb undertook anything other than to carry out his stated purpose, and official obligation, of enforcing the state's criminal statutes."). Further, "full custodial arrests" are not unconstitutional when the Ordinance Code currently provides for jail time.

Nor does the Court believe that parking police cars on property adjacent to The Gold Club was done with the intent to harass. The Defendants have submitted an affidavit stating that the cars were parked there as a police check off point. Affidavit of Therence L. Cloud (Doc. No. 16, filed in open court August 14, 1997) at ¶ 3.[5] With respect to Plaintiff's argument that arrests were conducted by officers in Ninja masks, the Defendants have explained that these were worn by undercover vice officers whose identities would have been disclosed but for the masks.

---

5. The court accepts this affidavit notwithstanding its untimely filing under the local rule. *See* Lo-cal Rule 4.06(b)(2).

*See, e.g.,* Affidavit of Robert Beers ("Beers Aff.") *attached to* Defendants' Notice of Filing Affidavits (Doc. No. 14, filed August 13, 1997) at ¶ 7. Whether the officers sexually harassed performers during these arrests cannot be determined at this time based on the evidence submitted by the Plaintiff.

Further, the Plaintiff has not presented evidence to rebut Defendants' affidavits which state that the police enforcement of the Ordinance Code against Plaintiff is no greater than enforcement against other establishments.[6] *See Wilson v. Thompson,* 593 F.2d 1375, 1383 (5th Cir.1979) (to warrant federal intervention in state prosecution, plaintiff must show prosecution was motivated by retaliation). Nor can the Court conclude that the Defendants have intentionally harassed Plaintiff based on Defendants' alleged behavior with respect to Plaintiff's counsel. *See Webb,* 594 F.Supp. at 1194 ("None of these circumstances, either individually or taken together, warrant an exception to the Younger doctrine.").

■ Finally, there is certainly no evidence before the Court of bad faith by Defendant Judge Mitchell. The Plaintiff argues that that Judge issued his temporary injunction without reaching the First Amendment issues. Failure to elucidate the reasons for one's judicial opinion may, in some cases, be cause for reversal, but in no way serves as evidence of bad faith by a Judge. *See Smith v. Hightower,* 693 F.2d 359, 367 (5th Cir. 1982) (retaliation must be a *major motivating factor and played a prominent role* ).

The Court does not find, based on the evidence submitted at this juncture, that Defendants' actions were sparked by the malicious desire to harass. The Court might have found otherwise if Defendants' belief, that Plaintiff's workers repeatedly violated the Ordinance Code, was an unreasonable belief. But that belief was reasonable, notwithstanding the conflicting decisions regarding the applicability of the Ordinance Code's city owned property exemption. The Court

recognizes that a great deal of tension exists between Defendants and Plaintiff; however, such tension is natural when there is a good faith belief that laws are being broken and attempts to enforce those laws are made.

The parties have submitted affidavits stating opposing views of the facts. The Court cannot, at this stage in the proceedings, resolve credibility issues in support of or in opposition to the Plaintiff's motion based on written submissions. The Court can, however, and does conclude that Plaintiff has not met its burden of establishing its right to the extraordinary relief it seeks at this time.

■ Further, this Court does not—and cannot—act as a court of appeals for a state court decision. *See Liedel v. Juvenile Court of Madison County, Ala.,* 891 F.2d 1542, 1545 (11th Cir.1990) (discussing the *Rooker–Feldman* doctrine); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Accordingly, the second *Younger* exception does not apply and this Court will not interfere with the state court proceedings by enjoining the enforcement of Judge Mitchell's Order.[7]

Even were the Court to hold otherwise, Plaintiff has not demonstrated its right to a preliminary injunction.

A preliminary injunction is an 'extraordinary and drastic remedy' and should not be granted unless the movant meets its burden of persuasion with respect to each of the following prerequisites: (1) a substantial likelihood of success by the movant on the merits; (2) that the movant will suffer irreparable harm unless the injunction issues; (3) that the threatened injury to the movant outweighs any threatened harm the injunction may cause the opposing party; and (4) that the injunction, if issued, 'will not disserve the public interest.'

---

6. *See, e.g.,* Beers Aff. at ¶ 4.

7. In any event, in a related case, *Lady J. Lingerie,* the Court found two days ago that the city property exemption of the Ordinance Code violates the Equal Protection Clause and declared the

exemption unconstitutional. *See* Memorandum Opinion (Doc. No. 116) *in Lady J. Lingerie.* The severability provisions of the Ordinance Code makes the remaining provisions enforceable.

*Anheuser-Busch, Inc. v. A–B Distributors, Inc.,* 910 F.Supp. 587, 589 (M.D.Fla.1995) (citations omitted).

## SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

In order to obtain the preliminary relief it seeks, Plaintiff must demonstrate that it has a substantial likelihood of success on the merits. *See Bryan v. Hall Chemical Co.,* 993 F.2d 831, 835 (11th Cir.1993). The parties agree that in order to succeed on the merits, Plaintiff must establish that the Ordinance Code at issue is unconstitutional and that Defendants City and Sheriff have engaged in bad faith prosecution. As discussed above, Plaintiff has not convinced the Court at this stage that the Defendants have engaged in bad faith prosecution. As discussed below, Plaintiff also has failed to show that the Ordinance Code is likely to be found unconstitutional.

## CONSTITUTIONALITY OF THE ORDINANCE CODE

### Does the Ordinance Code Violate the Eighth Amendment?

■ Plaintiff argues that the Ordinance Code is unconstitutional in that it contains a mandatory jail term and mandatory fines in violation of the Eighth Amendment prohibition on cruel and unusual punishment and excessive fines.[8] Section 150.609(c) of the Ordinance Code states that "The penalty for violation of this part shall be (1) a fine of not less than one hundred dollars nor more than five hundred dollars and (2) imprisonment of not less than two days nor more than thirty days." Ordinance Code § 150.609(c).

■ Before turning to the merits of this argument, the Court must consider whether the Plaintiff has standing to raise this Eighth Amendment constitutional challenge. Although the Defendants have not raised the issue of standing—indeed, the Defendants have barely responded to Plaintiff's Eighth Amendment claims—the "federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is per-

haps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990) *quoting Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The Plaintiff must "allege . . . facts essential to show jurisdiction. If [they] fai[l] to make the necessary allegations, [they have] no standing." *FW/PBS,* 493 U.S. at 231, 110 S.Ct. at 608 (citations omitted, modification in original).

As to the issue of standing and the Eighth Amendment,

> the law is well settled that "a plaintiff who has not been prosecuted under a criminal statute does not normally have standing to challenge the statute's constitutionality." *See Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) ("An examination of the history of the Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes."); *see also Palermo v. Rorex,* 806 F.2d 1266, 1271 (5th Cir.1987), *cert. denied,* 484 U.S. 819, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987) ("The cruel and unusual punishment clause of the Eighth Amendment applies only in criminal actions, following a conviction.").

*Johnson v. City of Dallas,* 61 F.3d 442, 444 (5th Cir.1995).

In the present case, Plaintiff has not brought any evidence before the Court that it has been subject to the penalty provisions found within the Ordinance Code. While it is true that performers and managers of The Gold Club have been arrested for violating sections of the Ordinance Code, the Court is not convinced that White's Place, Inc., d/b/a The Gold Club can bring this action on their behalf. *See Region 8 Forest Service Timber Purchasers Council v. Alcock,* 993 F.2d 800, 809 (11th Cir.1993) ("plaintiffs must assert their own rights and may not rest upon the rights of others."), *cert. denied,* 510 U.S. 1040, 114 S.Ct. 683, 126 L.Ed.2d 651 (1994);

---

**8.** The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII.

*see also id.* at 809 ("In cases allowing third-party standing, the relationship between the party asserting the right and the third party has been characterized by a strong identity of interests which is absent in an employer/employee relationship.").[9] Those Gold Club workers prosecuted under this Ordinance Code may bring an Eighth Amendment challenge, but not The Gold Club itself.[10] Accordingly, the Court finds that the Plaintiff is not likely to succeed on the merits when its right to bring this particular claim is doubtful.[11]

▮ Even were the Court to find that Plaintiff has standing to bring this claim, the Plaintiff has failed to demonstrate that it is likely to succeed in showing that the Ordinance Code violates the Eighth Amendment. "Not all punishment is cruel and unusual. 'The very words cruel and unusual punishments imply condemnation of the arbitrary infliction of severe punishments.'" *Morgan v. City of Detroit*, 389 F.Supp. 922, 928 (E.D.Mich.1975) *quoting Furman v. Georgia*, 408 U.S. 238, 274, 92 S.Ct. 2726, 2744, 33 L.Ed.2d 346 (1972) (Brennan, concurring). There is no record evidence that the penalties exacted on The Gold Club's workers were excessive or arbitrary.

▮ Finally, even were this Court to declare the penalty clause unconstitutional, Defendants argue that only that portion should be stricken, with the remainder of the Ordinance Code kept intact. Indeed, that is precisely what the court in *Edwards v. State*, 422 So.2d 84 (Fla.Dist.Ct.App.1982) chose to do: the court remanded the case with instructions to delete the portions of the ordinance in that case which establish minimum mandatory sentences and fines not similarly punishable under state law. *Id.* at 85.

In the present case, as in *Edwards*, there is a severability clause—indeed, this clause directly follows the penalty clause. *See* Ordinance Code § 150.610. Thus, the Defendants are correct that even were this Court to declare the penalty provision unconstitution-

---

**9.** The Court is mindful of the Eleventh Circuit's decision in *Leverett v. City of Pinellas Park*, 775 F.2d 1536 (11th Cir.1985), wherein the Court held that a nude bar corporation and its owners had standing to assert a First Amendment constitutional challenge to that City's Ordinance Code regulating the activities in question. There, the Court recognized the liberal standing rules when a First Amendment challenge is brought. *Id.* at 1538. Although some of the language in that case would support the view that Plaintiff here has standing (i.e., "These past arrests, combined with appellants' dire, authentic and continuing interest in engaging in the conduct prohibited by the ordinance, lead us to find that appellants have standing to bring this lawsuit"), this Court is not convinced that the doctrine of standing should be extended in this way for an Eighth Amendment challenge.

The Court is also aware of those cases stating that one who will suffer economic injury as a result of allegedly unconstitutional actions has standing. *See Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1252 (5th Cir.1995); *Gajon Bar & Grill, Inc. v. Kelly*, 508 F.2d 1317, 1322 (2d Cir.1974). But there, too, the plaintiffs did not allege violations of the Eighth Amendment. The Court notes, however, that Plaintiff has alleged facts—and submitted an affidavit—which would support standing under this theory. *See* Complaint at ¶ 78, Tomkovich Aff. at ¶ 3; *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir.1994) (on a motion for preliminary injunction, the standard to be applied to a sua sponte review of standing is that of a motion to dismiss, that is, taking the allegations of the Plaintiff's complaint as true, rather than the standard used to review a motion for summary judgment, that of requiring an evidentiary showing).

Nor can Plaintiff make an "anticipatory" challenge at this time, that is, argue that the threat of prosecution provides it with standing. Plaintiff has not demonstrated that the Defendants intend to prosecute The Gold Club or its owner under the Ordinance Code. Finally, that the owner of The Gold Club was detained with respect to a bad check and alleged affiliation with the Outlaws does not provide him with standing to challenge the penalty provisions under the Eighth Amendment: it does not appear that he was arrested or threatened with arrest for violating the Ordinance Code.

**10.** However, "To Plaintiff's knowledge, none of these cases [involving the thirty five or so arrests of Gold Club employees and performers based on the Ordinance Code] have been decided favorably to Defendants ... on the merits, many have been dismissed, and a number are still pending." Complaint at ¶ 45.

**11.** The Court notes that it is not dismissing Plaintiff's Eighth Amendment claim. Although the Court questions Plaintiff's right to bring this claim, the Defendants did not move to dismiss this claim. Accordingly, the Eighth Amendment claim will remain for the time being, subject to the Court granting either a motion to dismiss or motion for summary judgment filed by the Defendants.

al, the remainder of the Ordinance Code would be upheld—assuming that the Ordinance Code did not fail in its entirety for another reason.[12]

### Does the Ordinance Code's Penalty Provisions Exceed State Law Penalties?

 Plaintiff next argues that such mandatory fines and sentences exceed the minimum penalties set forth for any misdemeanor offense pursuant to Florida Statutes sections 775.082(4)(a) & (b) and 775.083(1)(e), which are zero dollars and zero days in jail. As annunciated by several Florida state courts, ordinance penalties may not exceed penalties imposed by the State for similar or identical offenses. *See Wyche v. State*, 619 So.2d 231, 237–38 (Fla.1993); *State v. McGurl*, 614 So.2d 648 (Fla.1993); *Edwards v. State*, 422 So.2d 84 (Fla.Dist.Ct.App.1982).

In response, Defendants argue that these cases are inapplicable because there the ordinances' punishments exceeded the *maximum* punishment found under state law, whereas in the present case, the Ordinance Code's mandatory minimum penalties exceed the State's minimum penalties.

While Plaintiff asks the Court to reach this issue under the Court's supplemental jurisdiction, 28 U.S.C. § 1367, the Court chooses not to decide what is purely a state law issue, particularly when the Court believes that even were the Court to find merit in Plaintiff's argument, this finding would not increase Plaintiff's chances of obtaining a preliminary injunction.[13]

### Does the Ordinance Code violate the First Amendment?

 The Court finds that the Plaintiff does have standing to assert a violation of the First Amendment. *See, e.g., Leverett v. City of Pinellas Park*, 775 F.2d 1536 (11th Cir.1985). However, Plaintiff has not demonstrated that it is likely to succeed on the merits of its First Amendment arguments.

Plaintiff argues that the Ordinance Code is unconstitutional in that the zoning provisions fail to allow alternative avenues of communication in violation of the First Amendment principles announced in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Specifically, Plaintiff argues that the Ordinance Code effectively bars the citizens' access to adult entertainment in that it allows adult businesses to operate by right (i.e., without special exception) only in the CCBD districts, where businesses must still meet the set back requirements of section 656.110(3), precluding operation within 500 feet from residences, 1000 feet from schools, churches, and other adult uses, and 500 feet from bars. Only two sites are available in the CCBD district for such use. *See* Exhibit P ("Pretrial Statement"), *attached to* Complaint, at p. 14.

Adult businesses may also operate within the CCG–2 zone, but must first obtain a special use permit. Plaintiff argues that this provision is unconstitutionally vague and grants unbridled discretion to the decision maker.

In response to Plaintiff's argument that the Ordinance Code fails to provide alternative sites, the Defendants argue that a limitation on available sites may be made as long as such limitation is reasonable. The Defendants point out that in addition to the two sites within the CCBD district, there are no less than 135 locations within the CCG–2 district which would allow for such establishments. Defendants further argue that the cases cited by the Plaintiff do not stand for the proposition that zoning exception requirements can render an Ordinance Code unconstitutional. Alternatively, the Defendants urge the Court to follow the lead of the district court in *O'Malley v. City of Syracuse*, 813 F.Supp. 133, 144 (N.D.N.Y.1993), where that court held that under *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), which upheld a

---

**12.** The Court has, in fact, struck portions of the Ordinance Code in *Lady J. Lingerie*. *See* Memorandum Opinion (Doc. No. 116); Preliminary Injunction Order (Doc. No. 18). However, the Ordinance Code has otherwise remained intact.

**13.** As stated, for example, any problem with the penalty clause would not affect the remainder of the Ordinance Code. *See* Ordinance Code § 150.610 (severability clause).

city wide ban on public nudity, it is irrelevant whether alternative avenues of communication are available. Additionally, Defendants argue that Judge Bucklew's decision in *Centerfold Club, Inc. v. City of St. Petersburg, et al.*, 969 F.Supp. 1288 (M.D.Fla.1997), upon which Plaintiff relies heavily, came to an erroneous conclusion.

Plaintiff is *not likely* to succeed on the merits of this argument when this Court has specifically held in a related case that the Ordinance Code does not violate the First Amendment. *See* Memorandum Opinion (Doc. No. 116) *in Lady J. Lingerie*. While the Court has found that two of the provisions of the Ordinance Code are unconstitutional, the Court has struck those provisions pursuant to the severability clause, and the remainder of the Ordinance Code remains intact.[14]

## CONCLUSION

This Court cannot interfere with the pending state court proceedings in which Plaintiff is entangled and cannot act as an appellate court with respect to Judge Mitchell's order. In addition, Plaintiff has not established at this time that it is likely to succeed on the merits of this dispute. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

(1) Plaintiff's Motion for Preliminary Injunction is **DENIED;** and

(2) Defendant Mitchell's Motion to Dismiss will be resolved in a separate order after the Plaintiff has had time to respond to the motion in accordance with the Local Rules. *See* Local Rule 3.01(b).

---

14. Accordingly, the Court need not reach the remaining factors of the preliminary injunction analysis, namely, whether Plaintiff will suffer irreparable harm, whether the threatened injury to the movant outweighs any threatened harm the injunction may cause the opposing party, and whether an injunction, if issued, 'will not disserve the public interest.'