KRAVITCH, Senior Circuit Judge,
dissenting:
Instead of enacting a generally applicable proscription on public nudity or a general prohibition on nudity in establishments licensed to serve alcohol, the City of Mobile chose to address “the combustible mixture of alcohol and nudity” by singling out traditionally protected forms of expression for criminal sanction. Although I agree with the majority that there is no “constitutional right to drink while watching nude dancing,” the Constitution does confer a right to be free from government regulation that prohibits expressive conduct on the basis of content. Because I believe that the majority fundamentally misapprehends the restrictions that the First Amendment imposes upon governmental power to regulate expression, I respectfully dissent.
I.
A.
Preliminarily, I take issue with the majority’s apparent assumption that because Ordinance 03-003 does not ban nude dancing outright, but rather merely conditions the right to present entertainment involving nudity on the surrender of a liquor license, the Ordinance does not significantly burden the exercise of First Amendment rights. The majority’s reasoning ignores the well-established proposition that
[e]ven though government is under no obligation to provide a person, or the public, a particular benefit, it does not follow that conferral of the benefit may be conditioned on the surrender of a constitutional right. In Perry v. Sindermann, 408 U.S. 593[, *1000 597], 92 S.Ct. 2694[, 2697], 33 L.Ed.2d 570 (1972), relying on a host of eases applying that principle during the preceding quarter-century, the Court explained that government “may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially his interest in freedom of speech.”
44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 513, 116 S.Ct. 1495, 1513, 134 L.Ed.2d 711 (1996) (internal citation omitted). Although the City may regulate the sale or service of alcohol, it may not condition the conferral of a liquor license—to which appellants concede they are not constitutionally entitled—on the forfeiture of the right to engage in expressive behavior.[1] Because the City authorizes the punishment, by fine or imprisonment, of licensees who “exhibit, suffer, allow, permit, engage in, participate in, or [are] connected with” one form of expressive behavior, the challenged ordinance imposes a significant burden upon First Amendment freedoms.[2]
B.
In denying appellants’ respective motions for preliminary injunctive relief, the district court relied upon “a long line of [Twenty-first Amendment] cases upholding the states’ authority to prohibit nude dancing in clubs licensed to sell alcohol.”[3] After the district court entered the preliminary orders, but before the court ruled on the parties’ motions for summary judgment, the Supreme Court decided 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996), which dispelled definitively the notion that the Twenty-first Amendment “qualif[ies] the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment.” Id. at 516, 116 S.Ct. at 1515. The district court recognized that kb Liquormart foreclosed the argument that the Twenty-first Amendment “provides an added presumption in favor of validity of state regulation in the area of topless dancing,”[4] but nevertheless concluded that the case “provided us with the roadmap for upholding” such state regulation.[5] In bb Liquormart, the Court cited Barnes v. Glen Theatre, Inc., 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), for the proposition that states enjoy the power “to restrict ... ‘bacchanalian revelries’ ... regardless of whether alcoholic beverages are involved.” 44 Liquormart, at 515, 116 S.Ct. at 1514 (citing Barnes and quoting California v. LaRue, 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342 (1972)). The district court interpreted this reference in bb Liquormart to mean that Barnes controls all First Amendment challenges to ordinances regulating nudity.
Following the district court’s lead, the majority, although conceding that bb Liquor-mart requires application of First Amendment scrutiny to the ordinance in question, suggests that 44 Liquormart confirms the City’s power to regulate nude dancing in establishments licensed to sell alcohol. The majority concludes that the Court’s treatment in 44 Liquormart of earlier First *1001 Amendment cases involving state regulation of alcohol and nude dancing provides support for the conclusion that Ordinance 03-003 does not offend the First Amendment. In California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), one of those earlier cases, the Court upheld a regulation of nude dancing in establishments serving alcohol on the basis of the authority conferred upon states by the Twenty-first Amendment. In 44 Liquormart, the Court, “[w]ithout questioning the holding in LaRue, ... disavow[ed] its reasoning insofar as it relied on the Twenty-first Amendment.” 517 U.S. at 516, 116 S.Ct. at 1514. Because the Court in Ub Liquormart stated in dicta that LaRue would have been resolved the same way had the Court not relied erroneously upon the Twenty-first Amendment, see 44 Liquormart, at 515, 116 S.Ct. at 1514 (“We are now persuaded that the Court’s analysis in LaRue would have led to precisely the same result if it had placed no reliance on the Twenty-first Amendment.”), the majority concludes that Ordinance 03-003 likewise should survive First Amendment scrutiny.
This case presents this circuit’s first occasion to address the impact of 44 Liquormart on state power to regulate nude dancing and the continued vitality of LaRue. In LaRue, the Court addressed the constitutionality of California Department of Alcoholic Beverage Control regulations that prohibited various forms of sexual conduct in licensed establishments. The Court, noting that “[t]he state regulations here challenged come to us, not in the context of censoring a dramatic performance in a theater, but rather in a context of licensing bars and nightclubs to sell liquor by the drink,” LaRue, 409 U.S. at 114, 93 S.Ct. at 395, reviewed the regulations under a standard considerably more deferential than it ordinarily reviews prohibitions targeted at protected expressive behavior. In light of what the Court believed to be “the added presumption in favor of the validity of the state regulation in this area that the Twenty-first Amendment requires,” id. at 118-19, 93 S.Ct. at 397, the Court decided that the Department’s regulations were not “irrational” or “unreasonable,” id. at 116, 93 S.Ct. at 396. The Court’s discussion of the state’s authority to regulate conduct with a communicative element, however, is hard to square with later decisions. The Court in LaRue stated:
While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink.
Id. at 118, 93 S.Ct. at 397. Precedent now makes clear that a state cannot condition a benefit on a forfeiture of First Amendment rights, see 44 Liquormart, at 512-14, 116 S.Ct. at 1513, or regulate the time, place, or manner of protected expression with content-based prohibitions, see Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989) (“[T]he government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions ‘are justified without reference to the content of the regulated speech ____’” (quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984))). Although the 44 Liquormart Court, in dicta, did not disturb the holding of LaRue, the Court eviscerated the basis for that decision. The U Liquormart Court squarely addressed whether the Twenty-first Amendment “qualif[ies] the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment,” 517 U.S. at 516, 116 S.Ct. at 1515, but it did not have before it, as did the Court in LaRue and as does our court now, a regulation prohibiting nude dancing in establishments with liquor licenses. The Court therefore had no occasion to evaluate closely the constitutionality of such an ordinance.[6] *1002 Unlike the majority, I do not believe that the dicta in UU Liquormart compels us to uphold the ordinance challenged here.
C.
The majority reads 44 Liquormart to require this court to review the challenged ordinance under the intermediate scrutiny applied in United States v. O’Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). O’Brien scrutiny is appropriate when a generally applicable regulation not directed at the communicative elements of conduct nevertheless infringes rights of free expression. See O’Brien, 391 U.S. at 376-77, 88 S.Ct. at 1678-79. O’Brien scrutiny involves the application of a four-part test:
[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial government interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.
Id. at 377, 88 S.Ct. at 1679. The majority concludes that the Supreme Court’s decision in Barnes v. Glen Theatre, Inc., 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), which reviewed under O’Brien scrutiny a challenge to Indiana’s prohibition on public nudity as applied to nude dancing, controls the case sub judice and accordingly that this court should apply the O’Brien four-part test.
In Barnes, the Court addressed the constitutionality of Indiana’s “prohibition against complete nudity in public places,” 501 U.S. at 564, 111 S.Ct. at 2459, as applied to establishments that provide totally nude dancing as entertainment. The Court, although recognizing that nude dancing “is expressive conduct within the outer perimeters of the First Amendment, though ... only marginally so,” id. at 566, 111 S.Ct. at 2460, concluded that the law was valid because it was supported by a state interest in protecting order and morality, was not targeted at “the erotic message conveyed by the dancers,” and imposed requirements no greater than those necessary to serve the state interest, id. at 567-572, 111 S.Ct. at 2461-63.
Barnes, however, does not control the case sub judice. The statute challenged in Barnes, although using the identical definition of “nudity” as the ordinance challenged here, did not single out one form of expression for disfavored treatment. The Indiana statute provided:
A person who knowingly or intentionally, in a public place: (1) engages in sexual intercourse; (2) engages in deviate sexual conduct; (3) appears in a state of nudity; or (4) fondles the genitals of himself or another person; commits public indecency, a Class A misdemeanor.
Ind.Code § 35-45-4-1 (1988), quoted in-Barnes, 501 U.S. at 569 n. 2, 111 S.Ct. at *1003 2462 n. 2. In contrast, the ordinance challenged here makes it unlawful “knowingly to exhibit, suffer, allow, permit, engage in, participate in, or be connected with, any motion picture, show, performance, or other presentation upon the licensed premises, which, in whole or in part, depicts nudity or sexual conduct or any simulation thereof.” City of Mobile Ord. 08-003 (emphasis added). Unlike the statute upheld in Barnes, which focused on nudity simpliciter and not on forms of expressive conduct or the messages they convey, the City of Mobile ordinance applies only to forms of conduct that are inherent ly—and traditionally—communicative: motion pictures, shows, performances, and “other presentation^].” Cf. Int'l Eateries of Am. v. Broward County, 941 F.2d 1157, 1161 (11th Cir.1991) (noting distinction between generally applicable, content-neutral regulations and those prohibiting conduct “precisely because of its communicative attributes”) (quoting Barnes, 501 U.S. at 577, 111 S.Ct. at 2466 (Scalia, J., concurring in the judgment) (emphasis omitted)), cert. denied, 503 U.S. 920, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992). A regulation that by its terms prohibits only traditional forms of expression cannot be said to be unrelated “to the suppression of free expression within the meaning of O’Brien ... [and thus is] outside of O’Brien’s test altogether.” Texas v. Johnson, 491 U.S. 397, 410, 109 S.Ct. 2533, 2543, 105 L.Ed.2d 342 (1989).[7]
This court often has distinguished regulations proscribing nudity per se, including general proscriptions on nudity in particular fora, from regulations targeted at expressive conduct. In Grand Faloon Tavern, Inc. v. Wicker, 670 F.2d 943 (11th Cir.1982), we upheld a city ordinance banning nudity on premises where alcohol was served. The ordinance, unlike the one before us now, did not single out nudity in “any motion picture, show, performance, or other presentation,” but rather simply banned all nudity in establishments offering alcohol for sale. See id. at 944 n. 2. Because the regulation thus was not targeted at traditionally expressive behavior, we applied O’Brien scrutiny and upheld the ban. In Krueger v. City of Pensacola, 759 F.2d 851 (11th Cir.1985), however, we invalidated a ban almost identical to that in Grand Faloon because, unlike the ban in Grand Faloon, which was supported by a legitimate *1004 and substantial government interest in regulating activities likely to lead to breaches of the peace, the record demonstrated that the city’s motive was to restrict expression. 759 F.2d at 855-56. Both cases addressed regulations that facially banned all nudity in establishments licensed to serve alcohol, rather than solely nudity in the course of traditionally expressive forms of conduct. See Krueger, 759 F.2d at 853-54 n. 3; Grand Faloon, 670 F.2d at 944 n. 2.
Ordinance 03-003 on its face singles out nude entertainment and thus the “erotic message conveyed” by that conduct. Barnes, 501 U.S. at 570, 111 S.Ct. at 2463. Ordinance 03-003 would not by its terms apply, for example, to a nude waitress serving drinks at a licensed establishment or to a patron entering such a club nude, whereas it would apply to a production of “Hair” or “Equus”—or any other artistic production that includes nudity, however minor or incidental—at a club licensed to sell alcohol. Cf. Barnes, 501 U.S. at 585 n. 2, 111 S.Ct. at 2470 n. 2 (Souter, J., concurring in the judgment) (“It is difficult to see ... how the enforcement of Indiana’s statute against nudity in a production of ‘Hair’ or ‘Equus’ somewhere other than an ‘adult’ theater would further the State’s interest in avoiding harmful secondary effects....”). Instead of targeting nudity per se, which clearly is a permissible exercise of municipal or state authority, see Barnes, supra, the Mobile ordinance targets only conduct with communicative elements.[8] Because courts consistently have reviewed such content-based restrictions with a level of scrutiny more searching than O’Brien scrutiny, which we have applied to generally applicable, eon-tent-neutral regulations, the majority is incorrect to conclude, simply because the claim before the court is a challenge to a nudity ordinance, that Barnes’s O’Brien scrutiny is appropriate in this case.[9]
D.
Because I believe that the majority applies the wrong level of scrutiny, I address the City’s argument that time, place, and manner scrutiny—another form of intermediate scrutiny—is applicable in this ease. In my view, in determining the appropriate level of scrutiny, this court should look to the character of the regulation. If the regulation is content-based—because it singles out one form of expression for disfavored treatment—then searching scrutiny is appropriate. See Boos v. Barry, 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988). If, on the other hand, the regulation is content-neutral—because it is justified not by “reference to the content of the regulated speech,” Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976), but rather to the “secondary effects” olthat speech, see Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986)—then less-searching time, place, and *1005 manner scrutiny may be appropriate, see id. at 46,106 S.Ct. at 928.
The City contends, and the majority agrees, that the Ordinance was not promulgated because of a disagreement with the message conveyed by nude dancing, but rather was an attempt to regulate the secondary effects of nude dancing. The City and the majority rely upon Renton, supra, Young v. American Mini Theatres, Inc., 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), and Int’l Eateries of Am. v. Broward County, 941 F.2d 1157, 1161 (11th Cir.1991), cert. denied, 503 U.S. 920, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992). In Renton and Young, the Court upheld zoning ordinances restricting the permissible locations for adult theaters that presented nude dancing. Although the regulations challenged in those cases “treat[ed] theaters that specialize in adult films differently from other kinds of theaters,” Renton, 475 U.S. at 47, 106 S.Ct. at 929, and thus at first blush seemed to be content-based, the Court in each case concluded that the regulations were justified without reference to the content of the regulated speech because they were “aimed not at the content of the films ..., but rather at the secondary effects of such theaters on the surrounding community,” id. (emphasis in original); accord Young, 427 U.S. at 71 n. 34, 96 S.Ct. at 2453 n. 34. In Renton, for example, the Court upheld the district court’s conclusion that the “city’s pursuit of its zoning interests here was unrelated to the suppression of free expression” because the Court believed that the ordinance “by its terms [was] designed to prevent crime, protect the city’s retail trade, maintain property values, and generally protect and preserve the quality of the city’s neighborhoods, commercial districts, and the quality of urban life.” 475 U.S. at 48, 106 S.Ct. at 929; accord Young, 427 U.S. at 71 n. 34, 96 S.Ct. at 2453 n. 34 (noting that “[i]t is [the] secondary effect [of crime and urban deterioration] which these zoning ordinances attempt to avoid, not the dissemination of ‘offensive’ speech”).
In International Eateries, this court applied Renton to uphold a local zoning ordinance restricting the permissible locations for clubs presenting non-obscene nude dancing. Applying time, place, and manner scrutiny, this court concluded that the challenged ordinance: (1) furthered a substantial governmental interest in “protecting the quality of urban life from the secondary effects of adult businesses,” 941 F.2d at 1162; (2) was narrowly tailored to further that interest because it focused only on those businesses likely to cause secondary effects, id. at 1163; and (3) allowed reasonable alternative avenues of communication because there were “sufficient alternative locations” where the theaters could lawfully operate, id. at 1165.[10]
The significant difference between the ordinance challenged in International Eateries and the one challenged here, however, is that the former was a zoning ordinance, whereas the one in the ease before us is a direct regulation of expressive conduct.[11] Closely read, Renton, Young, and International Eateries apply only to zoning ordinances. See Renton, 475 U.S. at 49, 106 S.Ct. at 929-30 (“[Zfoning ordinances designed to combat the undesirable secondary effects of such businesses are to be reviewed under the standards applicable to ‘content-neutral’ time, place, and manner regulations.”) (emphasis added); Young, 427 U.S. at 71, 96 S.Ct. at 2453 (“[W]hat is ultimately at stake is nothing more than a limitation on the place where adult films may be exhibited----”); Int’l Eateries, 941 F.2d at 1159 (“[T]he Supreme Court has held that under some circumstances cities may enact zoning ordinances that require adult movie theatres to locate only in certain areas, provided that the purpose of the regulation is to control the *1006 secondary effects of these businesses.”) (emphasis added) (internal quotation omitted); see also Buzzetti v. City of New York, 140 F.3d 134 (2d Cir.1998) (upholding city’s “Zoning Amendment,” which “does not forbid the operation of any category of business [but ijnstead ... restricts the areas in which certain sexually-oriented businesses may operate”). Indeed, zoning regulations are amenable to time, place, and manner scrutiny at least in part because, although they restrict the locations available for a given use, they generally leave some areas open for the disfavored use. See Renton, 475 U.S. at 54, 106 S.Ct. at 932 (“[The City has] sought to make some areas available for adult theaters and their patrons, while at the same time preserving the quality of life in the community at large by preventing those theaters from locating in other areas. This, after all, is the essence of zoning.”); Young, 427 U.S. at 71 n. 35, 96 S.Ct. at 2453 n. 35.
Unlike the zoning ordinances upheld in Young, Renton, and International Eateries, which preserved for adult entertainment “ample, accessible real estate,” Renton, 475 U.S. at 53, 106 S.Ct. at 932, the City of Mobile’s regulation prohibits establishments that wish to serve alcohol and present nude dancing from operating anywhere. Of course, as the City and the majority point out, appellants are free to provide nude dancing at their current locations as long as they are willing to forego the privilege of serving alcohol. As already stated, however, see supra Section I.A, this argument ignores the well-established proposition that government may not condition the “conferral of [a] benefit ... on the surrender of a constitutional right.” 44 Liquormart, at 513, 116 S.Ct. at 1513. Although the Supreme Court and this circuit have upheld zoning regulations that, as measures of social policy, have dissipated or segregated the effects of adult theaters, neither has, without relying on a now-discredited view of the Twenty-first Amendment, upheld an outright ban targeted solely at conduct protected by the First Amendment.[12] Because I conclude that the secondary-effects exception is inapplicable in this case, I believe that this court should analyze Ordinance 03-003 as a content-based restriction.
E.
My conclusion that Ordinance 03-003 is a content-based restriction on protected expression that must be evaluated under searching judicial scrutiny finds strong support in ease law. This court has distinguished between regulations of nudity that permissibly (and incidentally) burden protected expression and regulations that impermissibly target protected expression for sanction. In Leverett v. City of Pinellas Park, 775 F.2d 1536 (11th Cir.1985), this court upheld against a First Amendment challenge an ordinance prohibiting nudity in the course of food and drink service because the ordinance did not apply to protected expression, such as dancing. See id. at 1540. The court struck down a companion ordinance that prohibited “nude or semi-nude entertainment in any commercial establishment,” id. at 1537 (emphasis added), however, because, as a direct regulation of conduct protected by the First Amendment, the court *1007 subjected it to “the stricter standard typically used to review an infringement on a protected liberty interest justified solely under the government’s police power,” id. at 1540 (citing Krueger v. City of Pensacola, 759 F.2d 851 (11th Cir.1985)). The court noted that in order to justify a content-based regulation of protected expression, the city had an obligation to “come forth with more than simply an articulation of some legitimate interest that the city could have had to justify its prohibition.” Leverett, 775 F.2d at 1540 (internal quotations omitted).[13] Although the eonclusory language contained in the ordinances that “competitive commercial exploitation of nudity is adverse to the public health, peace, morals and good order, and [that] it is in the best interest of the public health, safety and convenience to restrict such nudity ...,” id. at 1539, was sufficient to justify the ordinance generally proscribing nudity in the course of food service because that ordinance did not “on its face govern activity protected by the First Amendment,” id. at 1540, the language could not save the ordinance prohibiting nude entertainment.
The ordinance invalidated in Leverett, which was targeted solely at expressive conduct, is indistinguishable from the one challenged here. See also BSA, Inc. v. King County, 804 F.2d 1104, 1107-08 (9th Cir.1986) (enjoining operation of statute explicitly banning “common barroom type topless dancing” because the “[prohibition of a category of protected expression, including that which is sexually explicit, can be upheld only where it furthers a substantial governmental interest unrelated to suppression of free expression ... and where the governmental interest could not be served by a means less intrusive on First Amendment activity”). I am convinced that this court should review Ordinance 03-003, as well, under “the stricter standard typically used to review an infringement on a protected liberty interest justified solely under the government’s police power.” Leverett, 775 F.2d at 1540.
F.
In my view, the City has not satisfied this stricter standard. To survive First Amendment scrutiny, the City must, at a minimum, demonstrate that its interest in regulating the conduct at issue in this case “is based on something other than a desire to censor the communication because of the community’s dislike of its content.” Krueger, 759 F.2d at 854. The City argues that it acted to address the adverse secondary effects of nude dancing combined with alcohol consumption and that the preamble to Ordinance 03-003 makes clear that the City was not targeting the message of the expressive conduct, but rather was combatting the secondary effects of that behavior.[14] The interests stated in the Ordinance’s preamble—discouraging “undesirable behavior” and avoiding “disturbances”—are, of course, legitimate governmental interests. As in Leverett, however, “the City has made no showing as to the factual basis for its articulated concerns and the motivation for passage of [the ordinance] beyond the conclusions stated in the ordinance itself,” 775 F.2d at 1540, a showing that is insufficient to “justify its infringement on protected expression,” id. The majority concludes that the City permissibly relied upon other cities’ findings that the commingling of alcohol and nudity produces undesirable effects. Although the majority is correct that “[t]he First Amendment does not require a city, before enacting [a zoning ] ordinance, to conduct new studies or produce evidence independent of that already gener *1008 ated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses,” Renton, 475 U.S. at 51, 106 S.Ct. at 931 (emphasis added),[15] this court consistently has required a significantly stronger showing to justify content-based regulations of expressive behavior outside of the zoning context, see, e.g., Leverett, 775 F.2d at 1540. The mere assertion, unsupported by any legislative findings, that a city seeks to address the undesirable secondary effects of a disfavored activity is insufficient to justify a regulation that by its terms prohibits only conduct that is protected by the First Amendment.
Even if the City had made findings, moreover, I have serious doubts that the City’s interest in discouraging undesirable behavior and avoiding disturbances would be sufficient to justify Ordinance 03-003’s content-based restriction. Furthermore, given the availability of alternative regulatory means that could accomplish the City’s avowed goals without singling out protected expression for sanction, see infra Section II, in my view Ordinance 03-003 could not satisfy the means scrutiny that the First Amendment requires. I therefore would hold that the district court erred in granting summary judgment in favor of the City on appellants’ First Amendment claim and that the district court should have granted summary judgment in favor of appellants on their facial challenge to Ordinance 03-003.
II.
This court does not have before it a generally applicable proscription on public nudity, see, e.g., Barnes, 501 U.S. at 569 n. 2, 111 S.Ct. at 2462 n. 2, or a general prohibition on nudity in establishments licensed to serve alcohol that is not limited solely to expressive conduct, see, e.g., Grand Faloon Tavern, Inc. v. Wicker, 670 F.2d 943, 944 n. 2 (11th Cir.1982). Presumably, either of those approaches would have accomplished the City’s avowed goals and survived First Amendment scrutiny.[16] Instead, the City of Mobile chose to address the problems associated with “nudity, sexual conduct[,] and [the] depiction thereof[ ] coupled with alcohol in public places,” City of Mobile Ord. 03-003, by subjecting to criminal sanction only activity clearly recognized to be within the protection of the First Amendment. Because I believe that the First Amendment prohibits the City of Mobile from enacting such a regulation and that the majority has misapplied long-established First Amendment principles, I respectfully DISSENT.

. The majority concedes that it is well established that "nude dancing ... is expressive conduct within the outer perimeters of the First Amendment....” Barnes v. Glen Theatre, Inc., 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991).

. I disagree with the majority's conclusion that the "reference in 44 Liquormart to the proposition that government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests ... does not apply to this case.” The applicability of the unconstitutional conditions doctrine does not turn on whether conferral of the discretionary benefit is conditioned upon completely foregoing the right to engage in expression or instead upon foregoing the right to engage in that expression in certain places or manners or at certain times. Rather, the doctrine applies as long as the governmental actor demands some sacrifice of a constitutional right in exchange for an otherwise discretionary benefit. See FCC v. League of Women Voters, 468 U.S. 364, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984) (invalidating provision of Public Broadcasting Act that prohibited noncommercial educational television stations that received public funds from endorsing candidates or editorializing); Pickering v. Bd. of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (holding that constitutionally protected speech is impermissible ground for discharge from public employment).

. Summary Judgment Order ("Order") at 6.

. Order at 8 (internal quotations omitted).

. Id.

. N.Y. State Liquor Auth. v. Bellanca, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981), and Newport v. Iacobucci, 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986), cited by the majority, likewise cannot provide support for the regulatory authority the City seeks to exercise. In Bellanca, the Court upheld a statute prohibiting nude dancing in establishments licensed to sell *1002 liquor. The sole basis of the Court’s holding, however, was the power that it believed the Twenty-first Amendment conferred upon states to regulate alcohol. The Court concluded that "[¡judged by the standards announced in LaRue and Doran [v. Salem Inn, Inc., 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), which followed LaRue], the statute at issue here is not unconstitutional.” 452 U.S. at 717, 101 S.Ct. at 2601. Relying upon a greater-includes-the-lesser rationale that has since been discredited, see 44 Liquormart, at 510-12, 116 S.Ct. at 1512; infra Section I.C, at note 7, the Court reasoned that the "State’s power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs,” Bellanca, 452 U.S. at 717, 101 S.Ct. at 2601, and that "[wjhatever artistic or communicative value may attach to topless dancing is overcome by the State’s exercise of its broad powers arising under the Twenty-first Amendment,” id. at 718, 101 S.Ct. at 2602. Bellanca thus rests upon a jurisprudential underpinning no longer followed by the Court.
Likewise, the Court in Iacobucci, following La-Rue and Bellanca, upheld an ordinance prohibiting "performing nude or nearly nude" in establishments licensed to sell liquor. 479 U.S. at 93 n. 1, 107 S.Ct. at 384 n. 1. The sole rationale advanced by the Court in upholding the regulation was the power that the Court believed the Twenty-first Amendment conferred upon states to regulate alcohol. See id. at 97, 107 S.Ct. at 386 (“ ‘Given the added presumption in favor of the validity of the ... regulation in this area that the Twenty-first Amendment requires,’ it is plain that, as in Bellanca, the interest in maintaining order outweighs the interest in free expression by dancing nude.’’) (quoting LaRue, 409 U.S. at 118-19, 93 S.Ct. at 397). After 44 Liquormart, Bellanca and Iacobucci appear to lack precedential value.

. En route to concluding that O’Brien intermediate scrutiny controls the case before us, the majority argues that the as-applied challenge in Barnes was simply a claim that the Indiana statute "was unconstitutional because it prohibited nude dancing” and thus that the claim in Barnes was the "same claim [that] is made against the Mobile ordinance.” With all due respect, I believe that the majority misapprehends the difference between an as-applied challenge to a content-neutral regulation and a facial challenge to a content-based regulation.
The statute challenged in Barnes did not by its terms specifically proscribe nude dancing, but rather prohibited all public nudity—and thereby incidentally prohibited some otherwise lawful expression. That the claim raised by the respondents in that case sounded in the First Amendment does not mean that their claim was identical to the one made by appellants in the case before us. Courts long have distinguished between content-based regulations targeted at expression, on the one hand, and generally applicable, content-neutral regulations that incidentally burden expressive freedoms, on the other. See generally L. Tribe, American Constitutional Law §§ 12-2, 12-3 (1988). Simply because it is within governmental power to accomplish a particular end, such as a categorical ban on nudity that a fortiori includes a more specific ban on nude dancing, does not mean that any means chosen will satisfy the requirements of the First Amendment. Rather, the First Amendment often requires courts to invalidate regulations that accomplish ends that lawfully could be achieved by different means. Compare Texas v. Johnson, 491 U.S. 397, 406-410, 109 S.Ct. 2533, 2540-2543, 105 L.Ed.2d 342 (1989) (invalidating state law that prohibited "desecration of venerated object[s],” because by singling out symbolic objects for protection, the state's asserted interest was implicated only when "a person’s treatment of the flag communicates some message”), with O’Brien, 391 U.S. at 370, 88 S.Ct. at 1675 (upholding conviction for burning draft card under statute that proscribed "knowingly destroying]” or "knowingly mutilating]” a Selective Service Registration certificate). Indeed, the First Amendment stands in part for the proposition that the greater power—in this case, the authority to regulate nudily—does not always include the lesser power—in this case, the authority to ban solely expressive conduct involving nudity. See 44 Liquormart, at 512, 116 S.Ct. at 1512 (rejecting greater-includes-the-lesser reading of the First Amendment and stating that "[t]he text of the First Amendment makes clear that the Constitution presumes that attempts to regulate speech are more dangerous than attempts to regulate conduct”).

. The majority suggests that "[w]e cannot assume that any regulation addressing nude dancing is a content regulation," because "controversy rages both in academia and society at large” over what precise message nude dancing conveys. I would have thought, however, that an ordinance targeted at communicative activities that express multiple messages is as invidious as, if not more so than, an ordinance that targets merely one message. One need only consider a simple example to see how subversive of basic First Amendment values the majority’s reasoning is: an ordinance banning all dancing would suppress a wide array of messages that could be conveyed by dancing, yet, according to the majority, that regulation would be permissible because "we cannot assume” that it targets any one particular message.

. Moreover, contrary to the majority's unsupported assertion, the Court in 44 Liquormart did not suggest that Barnes's O’Brien scrutiny should apply in all cases involving ordinances regulating nudity. Instead, the Court merely cited Barnes to support the statement that "the Court has recognized that the States’ inherent police powers provide ample authority to restrict the kind of 'bacchanalian revelries’ described in the LaRue opinion regardless of whether alcoholic beverages are involved.” 44 Liquormart, at 515, 116 S.Ct. at 1514. I doubt that the Court, in announcing a decision that restricted governmental power to regulate speech, meant to suggest that courts now should evaluate content-based regulations under the more-deferential O’Brien standard of review. Instead, the Court's citation to Barnes merely confirms that states and municipalities presumptively may regulate nudity with generally applicable, content-neutral ordinances—ordinances wholly unlike that passed by the City in this case.

. We applied the Renton secondary-effects analysis in International Eateries because at issue was the validity of a zoning ordinance similar to that considered in Renton and Young. See 941 F.2d at 1161. Distinguishing Barnes, we concluded that O’Brien scrutiny was inappropriate because the regulation “single[d] out nude dancing rather than broadly prohibiting all public nudity." Id.

. Contrary to the majority’s suggestion, Ordinance 03-003 does not seek “geographically [] to separate adult entertainment establishments from other commercial establishments.” (Emphasis added). Instead, the Ordinance seeks categorically to ban nude dancing in establishments—wherever they may be located—that serve alcohol.

. In Barnes, Justice Souter argued in his concurrence that Indiana could justify application of a generally applicable proscription of public nudity to nude dancing because the state has a legitimate and substantial government interest in combatting the secondary effects of adult entertainment. His concurrence, however, simply sought to justify the burden on First Amendment freedoms imposed by application of a content-neutral statute to expressive behavior—a result contemplated by O'Brien—and did not suggest that a prohibition, other than a zoning regulation, targeted at expressive behavior could be justified by reference to the secondary effects of the targeted behavior.
Likewise, in Cafe 207, Inc. v. St. Johns County, 66 F.3d 272 (11th Cir.1995), aff'g 856 F.Supp. 641 (M.D.Fla.1994), this court affirmed the district court’s conclusion that the governmental-interest prong of the O’Brien test was satisfied because, inter alia, the regulation combatted the secondary effects of nudity in adult entertainment. 856 F.Supp. at 644. Like the statute in Barnes, the ordinance challenged in Cafe 207 was a generally applicable, and not a content-based, prohibition on public nudity. The majority's reliance on Cafe 207 thus is misplaced.

. See Leverett, 775 F.2d at 1540 ("When a fundamental interest such as freedom of expression is regulated, the City must also show that the legitimate concern it articulates has 'more than merely speculative factual grounds, and that it was actually a motivating factor in the pas

. Indeed, an argument by the City that it was worried about the effects of adult entertainment alone, as was the city in Renton, 475 U.S. at 50, 106 S.Ct. at 930, rather than the effects of the entertainment combined with alcohol consumption, would be unconvincing because the City still permits nude dancing; Sammy's has been presenting nude dancing (without alcohol) since this litigation began, yet has not violated Ordinance 03-003.

. Accord Int'l Eateries, 941 F.2d at 1162 (holding that a city "need not conduct its own studies” in order to "have a reasonable basis for its belief that the harm to be protected against [by the zoning ordinance] in fact exists”). Likewise, the proof requirements for regulations that are not targeted at expression may be relaxed. See Barnes, 501 U.S. at 584-85, 111 S.Ct. at 2470 (Souter, J., concurring in the judgment) ("[L]egislation seeking to combat the secondary effects of adult entertainment need not await localized proof of those effects.... I do not believe that a State is required affirmatively to undertake to litigate this issue repeatedly in every case.”). But cf. Triplett Grille, Inc. v. City of Akron, 40 F.3d 129, 135-36 (6th Cir.1994) (holding that "because the City has failed to demonstrate a link between nudity in non-adult entertainment and secondary effects, we do agree with the district court that the Akron ordinance must be struck down as facially unconstitutional under the First Amendment overbreadth doctrine"; stating that “[t]he ordinance makes no attempt to regulate only those expressive activities associated with harmful secondary effects and includes no limiting provisions”). Contrary to the majority’s suggestion however, this court never has allowed a state or municipality to enact a content-based restriction on expression based upon a mere showing that other localities have identified an evil to be addressed.

. Of course, these approaches could fail First Amendment scrutiny if they were merely intended to mask a governmental motive to suppress protected expression. See Krueger v. City of Pensacola, 759 F.2d 851 (11th Cir.1985).